852 A.2d 1126 (2004)
371 N.J. Super. 246
In the Matter of COUNTY OF MORRIS, Respondent-Appellant,
v.
MORRIS COUNCIL NO. 6, NJCSA, IFPTE, AFL-CIO, Charging Party-Respondent.
In the Matter of County of Morris, Respondent-Appellant,
v.
Communications Workers of America, Local 1040, AFL-CIO, Charging Party-Respondent.
Nos. A-0837-02T3, A-1575-02T3.[1]
Superior Court of New Jersey, Appellate Division.
Argued April 27, 2004.
Decided July 21, 2004.
*1127 Stephen E. Trimboli, Morristown, argued the cause for appellant County of Morris (Laufer, Knapp, Torzewski & Dalena, and Ronald Kevitz, Morris County Counsel, and Fredric M. Knapp, Special County Counsel, attorneys for appellant; Mr. Trimboli, of counsel and on the brief).
Craig S. Gumpel, Livingston, argued the cause for respondent Morris Council No. 6, NJCSA, IFPTE, AFL-CIO, in A-837-02T1 (Fox and Fox, attorneys; Mr. Gumpel, of counsel and on the brief).
Steven P. Weissman, Somerset argued the cause for respondent Communications Workers of America, AFL-CIO, in A-1575-02T3 (Weissman & Mintz, attorneys; Mr. Weissman, on the brief).
Robert E. Anderson, General Counsel, argued the cause for respondent Public Employment Relations Commission (Mr. Anderson, on the brief).
Before Judges STERN, LEFELT and PAYNE.
The opinion of the court was delivered by STERN, P.J.A.D.
In these appeals, consolidated for purposes of this opinion, the County of Morris appeals from orders of the Public Employment Relations Commission (PERC) based on conclusions that the County committed an unfair labor practice by declining to disclose employee home addresses to the Morris Council No. 6 (NJCSA, IFPTE AFL/CIO) and to the Communications Workers of America (CWA), when those employees were members of the respective "collective bargaining" or "collective negotiation" units.[2] In both cases the County was ordered to "[c]ease and desist from interfering with, restraining, or coercing employees in the exercise of the rights guaranteed to them by [the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq.] in particular by refusing to provide [each union] with the names and home addresses of all employees in its negotiating unit" and from "[r]efusing to negotiate in good faith" with each union by refusing to provide the list. The County was ordered to provide a list of home addresses of all employees within the negotiations unit. The County was also ordered to post signs as directed by the Commission indicating compliance with the order.
On both appeals the County argues that (1) "mandatory disclosure of records containing home addresses would unduly infringe upon the County's constitutional authority to reasonably regulate access to its property," (2) "PERC committed legal error in its decision below in that it ignored United States Supreme Court precedent, ignored New Jersey Supreme Court precedent, and failed to give adequate consideration to the individual's privacy right to maintain the confidentiality and to control the dissemination of his or her home address," and (3) "PERC's finding that the County has refused to negotiate in good faith lacks any basis in the record evidence." In the Council 6 appeal, the County also argues that PERC relied upon improper and inadmissible evidence and *1128 improperly concluded that prosecutors and employees in juvenile detention offices have a "safety interest in protecting their home addresses."
The County argues that the employees' privacy interests in maintaining the confidentiality of their home addresses, and in determining who may or may not have access, "overrides any alleged interest that a union organization may have in obtaining home addresses without employee consent." It challenges the Commission's decision to the contrary and argues that the Commission was wrong in sustaining the unfair practice charge complaints.
Although we have a sincere concern about the right of unit members to decide for themselves whether they want to have their addresses given to the union, we affirm the orders entered in these cases because the record reflects no suggestion that either union would harass or otherwise annoy members with unwanted mail or disseminate the addresses to any third party. Moreover, nothing in the record suggests that members of the negotiations unit actually object to the request. While there have been numerous cases decided since our unreported opinion affirming PERC's similar holding in 1988, In re Burlington County, 14 NJPER 327 (¶ 19121 1988), aff'd, NJPER Supp.2d 208 (¶ 183 1989) (App.Div. No. 4698-87T1), none have disapproved of the PERC ruling we sustained therein,[3] and the Legislature has not amended the Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -30 ("the Act"), to affect that result.

I.
Council No. 6 represents about 500 "white collar and blue collar" county employees in the bargaining unit involved in this case. The union communicates with its members mainly through the County's interoffice mail system. However, according to the union president, there had been perceived "[s]erious problems" with the "confidentiality" of items sent through that system. There were complaints that some outside "mail had been opened and read" before delivery and arrived with a notation written on the envelope that it had been opened by "mistake." The union's monthly newsletter, often containing time-sensitive material, would be delivered through interoffice mail a week or two late.
Telephone communication was ineffective, as the employee sometimes was not available or out of the office. Employees were reluctant to discuss confidential union matters on the phone at work. Monthly union meetings likewise were unsatisfactory vehicles, as giving notice was difficult. An average attendance was about fifteen to twenty members, and the union did not have the e-mail addresses of unit members.
At some time in 1999, the union filed a set of grievances on behalf of employees seeking salary adjustments because of pay inequities. The grievances were resolved by negotiations, and the union asked for their members' home addresses so that it could notify the employees of salary adjustments they would receive and let them know "that the union was working for them." According to its president, the County refused to supply the addresses, but invited the union to draft letters to the affected employees, which letters would be reviewed by the County Administrator and e-mailed to the employees' homes. On August 12, 1999, the union faxed the draft letters to the County Administrator. The union president testified that, to the best of her knowledge, the County Administrator *1129 did send the letters to the employees' homes, apparently by regular mail.
By letter dated August 13, 1999, the union wrote the County as follows:
In connection with our statutory duties, please provide us with the names and home addresses of each employee in the unit represented by Morris Council No. 6. Kindly provide us with this information within thirty (30) days of the date of this letter.
By letter dated September 22, 1999, counsel for the County declined to provide the home addresses on the ground that the county was "legally barred" by Executive Order No. 11, issued by Governor Brendan Byrne in 1974, from disclosing personnel records of employees. As an "alternative," counsel noted that "the County is prepared to negotiate allowing Council No. 6 access to the County's internal mail system for the purpose of communicating with bargaining unit members." The union did not respond to or accept this offer.
Among the members of the negotiations unit in question were about thirty juvenile detention officers, whose duties included supervising juveniles committed by a court to a detention center. The unit also included about thirty clerical workers in the prosecutor's office. The prosecutor's office has a rule prohibiting the release of home addresses of its employees because of their involvement in criminal investigations. Another group in the unit consisted of thirty to fifty employees of the county's Department of Human Services, some of whom investigate criminal activity in the provision of county services, and some of whom work with State and law enforcement agencies in connection with domestic violence, child abuse and abuse of the elderly.

II.
The CWA is the majority representative of the County employees assigned to the Office of Temporary Assistance. In the CWA case, the union's request for a list of home addresses was also rejected. In that case, also commenced by the union's unfair practice charge alleging violation of the Act, the parties entered into a Stipulation of Facts. The stipulation included the following:
7. The Parsippany office of the County Office of Temporary Assistance is budgeted for 156 positions. Of these, 135 are positions included in the CWA bargaining unit.
8. The Dover satellite office of the Office of Temporary Assistance is budgeted for seven positions, of which six are included in the CWA bargaining unit.
9. All bargaining unit employees of the County Office of Temporary Assistance work Monday through Friday, 8:30 a.m. to 4:30 p.m. In addition, one social worker is assigned to be on call for evenings and weekends in connection with the homeless "hotline" maintained by the County Office of Temporary Assistance.
10. The CWA has one shop steward assigned to he Dover satellite office ... The CWA has four shop stewards assigned to the Parsippany office;....
11. On or about July 31, 2001, the CWA requested a list of all bargaining unit employees, including home addresses, from County Labor Relations Director John R. McGill. The County provided employee names, but declined, and has continued to decline, to provide home addresses.
12. The current collective negotiations agreement between the CWA and the County expired on December 31, 2001. The parties are in negotiations concerning a successor agreement....
13. There are two bulletin boards in the Parsippany office for use by the CWA; one on the first floor by the facilities, and one on the second floor in *1130 the hall next to the personnel boards. There is also a table in the kitchen on the second floor that the CWA may use for displays and communications with employees.

III.
The County argues that a public body has the "constitutional authority to reasonably regulate access to its property." It contends that "[a]ccess to a non-traditional public forum can be restricted by the government so long as the restriction is reasonable," and that its records of employees' home addresses "are not considered a traditional public forum." Thus, it contends that it was constitutionally permitted to regulate access to those records, and that regulation was reasonable by virtue of various Executive Orders issued by New Jersey governors barring disclosure of personnel records such as home addresses. The unions suggest that the most recent Executive Order, No. 26 of 2002, supports their position.
The unions do not argue that the home addresses are public records under the Right to Know Law, as amended in 2001 by the Open Public Records Act, N.J.S.A. 47:1A-1 through -13. See N.J.S.A. 47:1A-10 (personnel records "shall not be considered a government record" except as specifically provided therein).[4] The Executive Orders that limit public access therefore have limited relevance to personnel records. At issue is not disclosure to the public at large, but rather disclosure to a bargaining representative that needs the addresses to accomplish the unions' statutory mandate to represent its members. In its opinion PERC so concluded:
It may be that an employee's home address is not a "public record" disclosable to any member of the public upon demand. Nevertheless, an address may still be disclosed on a limited basis for a proper purpose pursuant to a specific statute, as is the case here.
We agree with PERC that the Executive Orders are not germane in the special labor-law context presented here.
With respect to its "constitutional authority," the County relies on United States Supreme Court cases in which the Court acknowledged, in varying contexts, that the government may reasonably control access to property and information that is not a traditional forum for free speech without showing a compelling governmental interest, so long as the government's motive is not to suppress expression of views with which it disagrees. Cornelius v. NAACP Legal Defense & Educ. Fund, 473 U.S. 788, 804-808, 105 S.Ct. 3439, 3450-52, 87 L.Ed.2d 567, 581-84 (1985) (upholding presidential executive order prohibiting legal-defense and political-advocacy groups from participating in annual combined federal campaign charity drive conducted in federal offices during the work day); Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 46-48, 103 S.Ct. 948, 955-56, 74 L.Ed.2d 794, 805-07 (1983) (school district's internal mail not public forum; collective bargaining agreement's prohibition on use of interoffice mail by any union other than the one then representing teaching staff upheld); United States Postal Service v. Greenburgh Civic Ass'n, 453 U.S. 114, 132-33, 101 S.Ct. 2676, 2687, 69 L.Ed.2d 517, 532-33 (1981) (upholding statute prohibiting deposit of unstamped materials in residential mailboxes).
However, those cases do not involve requests for disclosure of employee information to their collective bargaining representative, *1131 as opposed to the general public. As PERC concluded:
[These cases] all recognize that the constitutional rights of citizens under the First Amendment do not override reasonable governmental restrictions on access to a non-traditional public forum. But none of these cases grants a constitutional right to a governmental entity to determine whether it will disclose information it deems non-public. That Council 6 may not have a constitutional right to demand access to a record does not mean that the County itself has a constitutional right to withhold that record. Disclosure can still be required if another source of lawsuch as our Act [the Employer-Employee Relations Act]compels disclosure. The County's control over its records must yield to the Legislature's directives.

IV.
The County nevertheless argues that PERC wrongly analyzed the facts of this case under governing federal and New Jersey labor law. It claims PERC inappropriately weighed the competing interests, giving too much weight to the unions' need for the addresses and too little weight to the employees' privacy rights; PERC's finding that respondents had experienced problems in communicating with employees was based on hearsay; PERC undervalued the special privacy interests of two groups of employees, the juvenile detention officers and prosecutor's office employees; and PERC's finding that the County had refused to negotiate in good faith lacked support in the record.
The Act prohibits a public employer from "[i]nterfering with, restraining or coercing employees in the exercise of the rights guaranteed to them by this act." N.J.S.A. 34:13A-5.4a(1). The Act also bars an employer from "[r]efusing to negotiate in good faith with a majority representative of employees in an appropriate unit concerning terms and conditions of employment of employees in that unit, or refusing to process grievances presented by the majority representative." N.J.S.A. 34:13A-5.4a(5). An employer who violates either provision commits an "unfair practice."
We have found no published New Jersey case in which the Judiciary has considered whether an employer's refusal to provide a union with member-employees' home addresses can constitute an unfair labor practice under the Act. In interpreting the unfair practice sections of the Act, however, our Supreme Court has looked for guidance in the federal courts' construction of the cognate provisions of the National Labor Relations Act, 29 U.S.C.A. 158(a)(1) & (5) (defining "unfair labor practice" in terms similar to those used in New Jersey's law). Galloway Tp. Bd. of Educ. v. Galloway Tp. Ass'n of Educ. Secretaries, 78 N.J. 1, 9, 393 A.2d 207 (1978). Significantly with respect to this case, our Supreme Court has admonished us "to look to the Act's federal analogue [which] is particularly appropriate with respect to the interpretation of the unfair practice provisions of N.J.S.A. 34:13A-5.4, as these parallel the unfair practice provisions of the LMRA in many respects." Ibid. As Justice Pashman pointed out, the federal statute authorizes the National Labor Relations Board ("NLRB") to adjudicate unfair labor practice charges, as does N.J.S.A. 34:13A-5.4, and precedent respecting NLRB decisions is therefore relevant under our law. See also Troy v. Rutgers, 168 N.J. 354, 373, n. 3, 774 A.2d 476 (2001); Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., 78 N.J. 144, 159, n. 2, 393 A.2d 278 (1978) ("since the unfair practice provisions of N.J.S.A. 34:13A-5.4 closely parallel those of the Labor Management Relations Act, 29 U.S.C. § 158 and § 160, the federal precedents *1132 should guide our interpretation of the State act").
The federal courts uniformly recognize that, in order to satisfy its obligations to bargain in good faith and to permit employees to exercise their bargaining rights, an employer in the private sector must furnish to a union any information that is needed for and relevant to the union's obligation to represent the employees. N.L.R.B. v. Acme Industrial Co., 385 U.S. 432, 435-36, 87 S.Ct. 565, 567-68, 17 L.Ed.2d 495, 499 (1967); N.L.R.B. v. CJC Holdings, Inc., 97 F.3d 114, 117 (5th Cir. 1996). This principle has been extended to the home addresses of unit members. See Prudential Ins. Co. of America v. N.L.R.B., 412 F.2d 77 (2d Cir.), cert. denied, 396 U.S. 928, 90 S.Ct. 263, 24 L.Ed.2d 226 (1969).
In Prudential, the union asked for a list of names and addresses of employees in the bargaining unit, who worked in district offices in thirty-four states. Id. at 79. Applying the "necessary and relevant" standard of Acme Industrial, supra, the court held that Prudential was bound to supply the requested data. Id. at 81-85. The "necessity" element was satisfied because none of the other suggested means of communication (bulletin boards, grievance committees, hand distribution of messages, or union meetings) was an effective way for the union to reach all the targeted employees. Id. at 81-83. In addition, the addresses were "relevant" to the union's statutory duty of representation:
It seems manifest beyond dispute that the Union cannot discharge its obligation unless it is able to communicate with those in whose behalf its [sic] acts. Thus, a union must be able to inform the employees of its negotiations with the employer and obtain their views as to bargaining priorities in order that its position may reflect their wishes. Indeed, the information sought was particularly relevant to the Union at the time of its last request, since it was then engaged in negotiating a new agreement with Prudential. Further, in order to administer an existing agreement effectively, a union must be able to apprise the employees of the benefits to which they are entitled under the contract and of its readiness to enforce compliance with the agreement for their protection.
[Id. at 84.]
The Prudential court also noted that, while a union must make a "special showing of pertinence" that some kinds of information are relevant to its bargaining function, home addresses so directly touch on the union's duty to represent that the union need not make a specific showing of "relevance" with respect thereto. Ibid. As Judge Irving R. Kaufman stated (albeit over the dissent of Judge Henry J. Friendly):
[D]ata without which a union cannot even communicate with employees whom it represents is, by its very nature, fundamental to the entire expanse of a union's relationship with the employees. In this instance it is urgent so that the exclusive bargaining representative of the employees may perform its broad range of statutory duties in a truly representative fashion and in harmony with the employees' desires and interests. Because this information is therefore so basically related to the proper performance of the union's statutory duties, we believe any special showing of specific relevance would be superfluous.
[Ibid.]
The court further observed that:
Supplying the requested list is hardly an onerous burden; it entails no such disruption of the employees' work as is ordinarily involved in allowing union organizers on the premises or permitting union experts to make an independent *1133 time study of the operations. In sum, we believe the immediate utility of this information to the Union clearly outweighs the minimal inconvenience to Prudential in having to supply it.
[Id. at 85.]
Similarly, in CJC Holdings, supra, 97 F.3d at 115, a union asked the employer for a list of all employees, their addresses and other data. One reason for the request was that over sixty copies of the union's newsletter had been returned by the post office "because of incorrect addresses." Ibid. The NLRB entered an order directing the employer to provide the names and addresses. Id. at 116. In enforcing the NLRB's order, the Court of Appeals for the Fifth Circuit adopted the rationale of Prudential, to the effect that addresses of employees are fundamental to a union's duty of representation. Id. at 117. It rejected the employer's claim that the union could communicate through other means, and deemed it inconsequential that the union might use the addresses to solicit employees for a legal action against the employer. Id. at 117-18.
In In re Burlington County, supra, a public employees' union filed an unfair practice charge against a county that had refused its request for "names and home addresses of representation fee payers" (employees who are not members of the union but who pay a percentage of membership dues in order to be represented by the union). 14 NJPER at 328. PERC found that the County had committed an unfair practice because, after balancing the interests, there was "no indication the union will use the information for any improper purpose" and "the intrusion on the employees privacy is minimal" while protecting their constitutional right to information. Id. at 329. In an unpublished opinion, we found that the record supported PERC's findings and its order was not "arbitrary or capricious." In that case PERC quoted from Prudential, supra, 412 F.2d at 84, and concluded:
We consider all the circumstances of a case in deciding the extent of an employer's duty to supply information, including an employee's privacy interest, the union's need for the information and the employer's business reasons for not supplying requested information. Here the scales tip to the union's needs. The union requires the information to comply with its obligation to notify employees under the representation fee statute, N.J.A.C. 19:17-3.3, as well as to communicate with the employees it represents. Further, there is no indication that the union will use this information for any improper purpose. The intrusion on employees privacy is minimal; they will receive some mail which will ensure their constitutional right to information concerning representation fee payments and will receive other mail which they may elect not to read. Therefore, under these circumstances, the public interest in collective negotiations and satisfactory performance of the union's statutory duty outweighs the employee's privacy interests in not disclosing a home address.
[Ibid.]
PERC relies on the federal precedent and on its earlier decision in Burlington County. Although the federal cases deal with private sector employment, we find no basis for disturbing PERC's application of the precedent in this setting, and, because of the aforementioned relevance of the NLRB precedent, adhere to the same approach as we took in the Burlington County case. See In re Bridgewater Tp., 95 N.J. 235, 244-45, 471 A.2d 1 (1984). This is particularly true because of differences in the state and federal legislation with respect to access to information concerning public sector employees.
*1134 The County argues that the above-cited precedent is outdated because recent federal and State decisions, following Department of Defense v. F.L.R.A., 510 U.S. 487, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994), have recognized employees' rights of privacy in their addresses. However, those cases are distinguishable.
In Department of Defense v. FLRA, two unions representing federal civil service employees requested home addresses of all Department of Defense ("DOD") employees in the pertinent bargaining units and filed unfair labor practice charges when they were denied. The unions alleged that the addresses were necessary to their duties under the federal labor laws. Id. The Court held, however, that disclosure was prohibited by the federal Privacy Act of 1974, 5 U.S.C.A. § 552a, which applies to federal agencies, and bars disclosure of any personal data that would not be accessible under the Freedom of Information Act, 5 U.S.C.A. § 552 ("FOIA"). Id. at 510 U.S. at 493-502, 114 S.Ct. at 1011-1016, 127 L. Ed.2d at 333-38. The Court reasoned that the addresses would not be obtainable under the balancing test required by the FOIA, because the negligible public interest in disclosure would not outweigh the employees' substantial interest in keeping their home addresses private. FLRA, supra, 510 U.S. at 500-02, 114 S.Ct. at 1015-16, 127 L. Ed.2d at 337-38. See also id., 510 U.S. at 504, 114 S.Ct. at 1017, 127 L.Ed.2d at 340 (Ginsburg, J. concurring). The Court noted, however, that "[t]o the extent that this prohibition leaves public sector unions in a position different from that of their private sector counterparts [who are not protected by the Privacy Act], Congress may correct the disparity." Id., 510 U.S. at 503, 114 S.Ct. at 1016-17, 127 L.Ed.2d at 339. See also id., 510 U.S. at 504, 114 S.Ct. at 1017, 127 L. Ed.2d at 340 (Souter, J. concurring) (case "does not ultimately resolve the relationship between the Federal Service Labor-Management Relations Statute (Labor Statute) and all of the Privacy Act of 1974 exceptions potentially available...."); Sheet Metal Workers Int'l Ass'n v. U.S. Dept. Vet. Affairs, 135 F.3d 891 (3d Cir. 1998).
As PERC concluded, however, this case is distinguishable from the Department of Defense case in the absence of a New Jersey statute that expressly protects the kind of information requested by the union. Moreover, the issue before us deals only with the provision of information to the unions. Our reasoning does not depend on statutes that relate to the general public's access to information, and our conclusion in this case does not compel such access. We reject the County's suggestion that Doe v. Poritz, 142 N.J. 1, 77-91, 662 A.2d 367 (1995), upholding public disclosure of personal information about sex offenders under Megan's Law, supports a position contrary to our holding.
The County contends that PERC in the Council 6 case undervalued the "special privacy interest" of employees of the county prosecutor's office and juvenile detention officers. It argues that these employees, even those not directly involved in criminal investigations, might be subject to threats or harm by criminals or suspects, and, therefore, have a heightened need for confidentiality of their home addresses. However, the record does not suggest a realistic concern of any danger that would be posed with respect to the prosecutor's clerical employees, or how the addresses would become known to juvenile offenders or criminals after delivery of the information to the union. We find no basis for disturbing PERC's conclusion that "there is no likely danger that the majority representative will use the home addresses to harass or retaliate against employees," or divulge them to criminals or juvenile detainees.
*1135 Finally, the County challenges PERC's "finding" that it refused to negotiate in good faith. It insists that it has always been "ready, willing and able to negotiate" over this issue, and it cites its September 22, 1999 letter to Council 6, in which it offered to negotiate over the "alternative" of allowing "access to the County's internal mail system for the purpose of communicating with bargaining unit members." However, PERC concluded:
The County notes that it has been willing to negotiate over alternatives to releasing addresses. That is true, but it is not a defense to a refusal to provide non-confidential information relevant to carrying out representational duties. See Curtiss-Wright Corp. v. NLRB, 347 F.2d 61 (3d Cir.1965); contrast Detroit Edison Co. v. NLRB, 440 U.S. 301, 99 S.Ct. 1123, 59 L.Ed.2d 333 (1979) (psychological test results were confidential). A refusal to supply such information violates the duty to negotiate in good faith so an order can logically refer to that duty.
In its September 22, 1999 letter, the County offered to negotiate over a means of communication, not about supplying the home addresses, and while the County's argument has some appeal, in these circumstances, we cannot disturb the finding. In any event, an unfair labor practice occurred at the moment the County refused to supply the addresses.
This is the very type of issue that the Legislature entrusted to PERC for initial resolution, and we cannot point to any statute or case law on which to conclude it is legally wrong. In essence, this case is controlled by our limited scope of review. We cannot disturb the ultimate determination of an agency unless it has been shown that such determination was arbitrary, capricious or unreasonable, that it lacked fair support in the evidence, or that it violated legislative policies expressed or implied in the act governing the agency. Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562, 189 A.2d 712 (1963); In re Failure by Dept. of Banking, 336 N.J.Super. 253, 263, 764 A.2d 494 (App. Div.2001).
We must give substantial deference to PERC's findings and conclusions in unfair practice cases, Matter of Bd. of Chosen Freeholders, 116 N.J. 322, 328, 561 A.2d 597 (1989), and "be both sensitive and circumspect" in our review because PERC has been invested "with broad authority and wide discretion in a highly specialized area of public life." Id. It has the "expertise and knowledge of circumstances and dynamics that are typical or unique" to public sector employer-employee relations. Id. Its conclusions based on those findings should be upheld so long as they are not arbitrary and even if we would have reached a different result on the record made. In re Bridgewater Tp., supra, 95 N.J. at 245-46, 471 A.2d 1.
As the Supreme Court has said:
It must also be emphasized that the judicial role in this kind of case must be both sensitive and circumspect. We deal here with the regulatory determination of an administrative agency that is invested by the Legislature with broad authority and wide discretion in a highly specialized area of public life. PERC is empowered to "make policy and establish rules and regulations concerning employer-employee relations in public employment relating to dispute settlement, grievance procedures and administration including ... to implement fully all the provisions of [the] act." N.J.S.A. 34:13A-5.2. These manifestations of legislative intent indicate not only the responsibility and trust accorded to PERC, but also a high degree of confidence in the ability of PERC to use expertise and knowledge of circumstances *1136 and dynamics that are typical or unique to the realm of employer-employee relations in the public sector.
[Matter of Bd. of Chosen Freeholders, supra, 116 N.J. at 328, 561 A.2d 597.]
Stated otherwise,
the scope of our review of PERC's factual determinations is limited; the evaluation of evidence is the province of PERC rather than of the courts, and when these determinations fall within PERC's special sphere of expertise, we accord them due weight. In re Bridgewater Township, 95 N.J. 235, 245, 471 A.2d 1 (1984).
[Id. at 329, 471 A.2d 1.]
In this case the record reflects no objections to disclosure by unit members or County employees, no reasonable basis for a fear of harassment or disclosure of the list to third parties or any special confidentiality considerations that would outweigh the unions' fundamental need for the home addresses, a need created by its statutory obligation to represent unit employees. Accordingly, the unions are entitled to the home addresses of their members and the employees within the negotiations unit.

V.
The orders of PERC are affirmed.
NOTES
[1] These appeals were argued together, and we have consolidated them for purposes of this opinion.
[2] See Troy v. Rutgers, 168 N.J. 354, 359 n. 1, 774 A.2d 476 (2001) (concerning the proper use of these terms with respect to public sector employment relations in New Jersey).
[3] The unpublished authority can be cited by us because it is published by the agency and applied by it as precedent. R. 1:36-3.
[4] Because PERC relied on its Council 6 opinion in the CWA case, the issues are the same, and the cases were argued together, we treat each union's argument to include the others, to the extent there are any differences.