7 A.3d 785 (2010)
416 N.J. Super. 602
Joan McGEE, Appellant,
v.
TOWNSHIP OF EAST AMWELL (Hunterdon), Respondent.
No. A-1233-09T2.
Superior Court of New Jersey, Appellate Division.
Submitted October 5, 2010.
Decided November 16, 2010.
*786 Joan McGee, appellant pro se.
Gebhardt & Kiefer, P.C., attorneys for respondent Township of East Amwell (Richard P. Cushing, Annandale, on the brief).
Paula T. Dow, Attorney General, attorney for respondent Government Records Council (Debra A. Allen, Deputy Attorney General, on the statement in lieu of brief).
Before Judges CARCHMAN, GRAVES and MESSANO.
The opinion of the court was delivered by *787 CARCHMAN, P.J.A.D.
On this appeal from a final decision of the Government Records Council (GRC or the Council) under Open Public Records Act (OPRA or the Act), N.J.S.A. 47:1A-1 to -13, we conclude that records created by a former public official are subject to the "deliberative process privilege" under OPRA. In addition, where an employee now claims that she has waived her privilege as to her "personnel records" but did not raise the issue before the Council, we remand this matter to the Council to determine whether the employee waived the confidentiality under the "personnel records" exception or whether there are countervailing concerns or policies that would preclude release of such records. We affirm in part, and reverse and remand in part.
Complainant Joan McGee appeals from a final decision of respondent Council of September 30, 2009, denying her request for reconsideration of the Council's determination that certain records of custodian Township of East Amwell (East Amwell) were exempt from disclosure under OPRA. Specifically, McGee seeks access to twelve e-mails circulated among a group of individuals affiliated with the East Amwell municipal government.
These are the relevant facts. East Amwell Township is organized as a township with a five-member Township Committee pursuant to N.J.S.A. 40A:63-1 to -9. By ordinance, East Amwell created the position of Township Administrator, who manages the township's personnel, and a Planning Board, which oversees the township's "physical development." E. Amwell, N.J.Code §§ 24-20 (creating and detailing the duties of the Township Administrator), 92-14 (creating and explaining the duties of the Planning Board). The term of a Planning Board member runs from January 1 of the year in which the appointment was made. E. Amwell N.J.Code § 92-14(B)(2); see also N.J.S.A. 40:55D-23(c). McGee was employed by East Amwell as "planning board administrator."
Apparently McGee has had an ongoing dispute with various individuals who were office holders or appointees in East Amwell in 2006. The specific nature of the dispute and the facts relevant to the friction between the parties are not a part of the record. We do glean from the facts a dissatisfaction with McGee's conduct; however, the details of the dispute are not relevant to our ultimate determination.
McGee filed work-related complaints with both the Equal Employment Opportunity Commission (EEOC) and the courts of New Jersey. As a result, certain e-mails were circulated among various township officials, employees or appointees. These e-mails form the gravamen of the dispute on appeal. The individuals who either authored, were the recipients of or were the subjects of these e-mails include Richard Cushing, the township attorney; Tim Matheny, the township administrator; Donald Reilly, a member of both the Township Committee and the Planning Board; Larry Tatsch, a member of the Township Committee[1]; and Barbara Wolfe, the chair of the Planning Board.
On October 23, 2007, McGee filed a "request for access to government records" with East Amwell demanding the record of a Township Committee meeting in October 2007 and all e-mails sent after December 31, 2006, "between/among Barbara Wolfe *788 . . . and Tim Matheny, Don Reilly, Larry Tatsch and any other member of [the Township Committee] and Richard Cushing, Esq." Theresa Stahl, East Amwell's municipal clerk, responded to McGee's request by telephone on November 1, 2007, and informed her that the requested records were ready for review. Several days later, on November 6, 2007, McGee met with Stahl to view and obtain copies of the approved correspondence. Stahl confirmed this meeting in a letter dated November 9, 2007, reiterating that she informed McGee at their meeting that some of the requested e-mails were protected by the attorney-client privilege. On November 27, 2007, Stahl issued a written "government records request response" granting access to seven additional e-mails and denying McGee access to any privileged attorney-client communications.
Following this rejection, on December 6, 2007, McGee filed a "denial of access complaint" with the GRC requesting review of East Amwell's decision. McGee alleged that (1) Cushing, Matheny and Reilly were "willfully withholding" their communications with Wolfe and should be sanctioned; (2) Wolfe's communications were not protected because she was not a township official after December 31, 2006; (3) no privilege existed between Wolfe and Cushing because they never shared an attorney-client relationship; (4) no attorney-client privilege protected communications between Wolfe and Matheny because neither was an attorney; (5) any privilege between township officials and Cushing was waived by the inclusion of Wolfe on their e-mails; and (6) Reilly violated state law by failing to maintain copies of all documents pertaining to official township business.
Responding to these claims, Cushing, as township attorney, asserted that he had been designated to advise township officials, including those specified in McGee's request, regarding a lawsuit that McGee had filed against the municipal government and several individuals therein. As a result, Cushing claimed to represent all parties designated in the requested e-mails. In addition, Cushing contended that the undisclosed e-mails were protected under the OPRA's "advisory, consultative, and deliberative exemption."
On April 29, 2009, the GRC's executive director, Catherine Starghill, issued her findings and recommendations. Starghill found that the custodian's failure to provide McGee with a written response within seven business days was "deemed" a denial. More importantly, Starghill recommended that the GRC conduct an in camera review of the twenty remaining undisclosed e-mails to determine whether any privilege applied. That same day, the GRC voted unanimously to adopt Starghill's findings and recommendations, ordering East Amwell to deliver the withheld e-mails for review.
Starghill completed her findings and recommendations on nineteen[2] undisclosed e-mails on August 4, 2009. In an interim order dated August 11, 2009, the GRC unanimously adopted these findings, making the determinations below.
1. The first e-mail was sent by Wolfe to Cushing at 10:04 a.m. on January 2, 2007. The Council ordered disclosure of this message with all personal information redacted.
2. The second e-mail was sent by Wolfe to Cushing at 9:40 p.m. on January 12, 2007. The GRC exempted *789 the message from disclosure based on the exceptions for "advisory, consultative, or deliberative material" and "personnel records."
3. The third e-mail was sent by Wolfe to Cushing and Eric Harrison at 9:40 a.m. on January 12, 2007. The GRC exempted the message from disclosure based on the exceptions for "advisory, consultative, or deliberative material" and "personnel records."
4. The fourth e-mail was sent by Matheny to Wolfe, with copies to Cushing, Reilly, Tatsch and Gardner, at 9:38 p.m. on January 15, 2007. The GRC exempted the message from disclosure based on the exceptions for "advisory, consultative, or deliberative material" and "personnel records."
5. The fifth e-mail was sent by Reilly to Matheny, with copies to Tatsch, Gardner, Wolfe and Cushing, at 8:46 a.m. on January 16, 2007. The GRC exempted the message from disclosure based on attorney-client privilege.
6. The sixth e-mail was sent by Wolfe to Matheny, with copies to Cushing, Reilly, Tatsch and Gardner, at 9:56 a.m. on January 16, 2007. The GRC exempted the message from disclosure based on the exceptions for "advisory, consultative, or deliberative material" and "personnel records."
7. The seventh e-mail was sent by Gardner to Wolfe, Matheny and Cushing, with copies to Reilly and Tatsch, at 6:50 p.m. on January 16, 2007. The GRC exempted the message from disclosure based on the exceptions for "advisory, consultative, or deliberative material" and "personnel records."
8. The eighth e-mail was sent by Wolfe to Gardner, Matheny and Cushing, with copies to Reilly and Tatsch, at 7:23 p.m. on January 16, 2007. The GRC exempted the message from disclosure based on the exceptions for "advisory, consultative, or deliberative material" and "personnel records."
9. The ninth e-mail was sent by Gardner to Wolfe, Cushing, Tatsch, Reilly and Matheny, at 9:46 p.m. on January 16, 2007. The GRC exempted the message from disclosure based on the exceptions for "advisory, consultative, or deliberative material" and "personnel records."
10. The tenth e-mail was sent by Reilly to Gardner, with copies to Tatsch, Matheny, Wolfe and Cushing, at 9:00 a.m. on January 17, 2007. The GRC exempted the message from disclosure based on the exceptions for "advisory, consultative, or deliberative material" and "personnel records."
11. The eleventh e-mail was sent by Reilly to Tatsch, with copies to Tatsch, Gardner, Matheny, Wolfe and Cushing, at 8:09 a.m. on January 18, 2007. The GRC exempted the message from disclosure based exclusively on the exception for "personnel records."
12. The twelfth e-mail was sent by Matheny to Tatsch and Reilly, with copies to Gardner, Wolfe and Cushing, at 11:47 a.m. on January 18, 2007. The GRC exempted the message from disclosure based exclusively on the exception for "personnel records."

*790 13. The thirteenth e-mail was sent by Gardner to Matheny, Tatsch and Reilly, with copies to Wolfe and Cushing, at 4:12 p.m. on January 18, 2007. The GRC exempted the message from disclosure based exclusively on the exception for "personnel records."
14. The fourteenth e-mail was send by Cushing to Reilly and Tatsch, with copies to Tatsch, Gardner, Matheny and Wolfe, at 5:17 p.m. on January 19, 2007. The GRC exempted the message from disclosure based on the attorney-client privilege.
15. The fifteenth e-mail was sent by Wolfe to Matheny, with a copy to Cushing, at 9:29 a.m. on January 20, 2007. The GRC exempted the message from disclosure based exclusively on the exception for "personnel records."
16. The sixteenth e-mail was sent by Cushing to Wolfe and Matheny at 12:17 p.m. on January 20, 2007. The GRC exempted the message from disclosure based on the attorney-client privilege.
17. The seventeenth e-mail was sent by Wolfe to Cushing and Matheny at 3:13 p.m. on January 20, 2007. The GRC exempted the message from disclosure under the attorney-client privilege.
18. The eighteenth e-mail was sent by Wolfe to Reilly at 7:24 p.m. on January 24, 2007. The Council ordered it disclosed.
19. The nineteenth e-mail was sent by Reilly to Wolfe at 8:30 p.m. on January 25, 2007. The Council ordered it disclosed.
Following notice of the GRC's decision, McGee moved for reconsideration, N.J.A.C. 5:105-2.10, asserting mistake and extraordinary circumstances. In support of her motion, McGee focused on Wolfe's status as a private citizen at the time of the e-mails. Because Wolfe's official position terminated on December 31, 2006, McGee argued, her inclusion on communications with the township attorney resulted in a waiver of the attorney-client privilege. Moreover, as an ordinary resident, Wolfe could neither participate in any advisory, consultative or deliberative discussions within the government, nor affect personnel matters in any way. According to McGee, any e-mail involving Wolfe constituted a non-official conversation analogous to a private citizen's complaints at a public meeting.
East Amwell opposed McGee's motion, stating that she "merely repeat[ed] the arguments she made in her Denial of Access Complaint without demonstrating either an extraordinary circumstance or a mistake by the Council. . . ." East Amwell also challenged McGee's characterization of Wolfe as simply a "random resident," highlighting Wolfe's "first hand knowledge of the issues and the people" relevant to the time period discussed in the e-mails. Moreover, East Amwell claimed, Wolfe's former position made her "central to the Township's defense" against McGee's previous lawsuit, rendering her inclusion in privileged attorney-client communications "completely appropriate."
The GRC denied McGee's request for reconsideration. Citing Cummings v. Bahr, 295 N.J.Super. 374, 685 A.2d 60 (App.Div.1996), the Council held that McGee "failed to establish . . . that 1) the GRC's decision is based upon a `palpably incorrect or irrational basis' or 2) it is obvious that the GRC did not consider the significance of probative, competent evidence, and rendered an arbitrary, capricious or unreasonable decision. . . ." More specifically, the Council found that:

*791 [T]he personnel matter which is the subject of the requested e-mails obviously began while Ms. Wolfe was chair of the Planning Board, involved the Planning Board matters and required Ms. Wolfe's continued involvement due to anticipated or on-going litigation including on-going negotiations with the Complainant's attorney regarding said personal matter. Therefore, it is conceivable that Ms. Wolfe's participation in the requested emails is essential given her official position which had only ended one month or less before the creation of the requested e-mails.
McGee filed a notice of appeal on November 5, 2009, seeking review of the GRC's decision to deny her access to email messages nos. 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13 and 15.[3] Following the perfection of this appeal, we requested that the GRC provide us with a copy of the disputed records for our in camera review. The documents were provided to us, reviewed and remain under seal.
On appeal, McGee asserts that (1) the Council relied on a non-existent exception for "personnel matters"; (2) the OPRA exception for "personnel records" protects only those documents found in a personnel file; (3) the OPRA exception for "personnel records" may be waived by the employee who is the subject of the requested documents; and (4) neither the "personnel" nor the "advisory, consultative, or deliberative" exception applies to communications to or from a private resident.
Our standard review, critical to our consideration of the issues raised on appeal, focuses our analysis. We will "accord deference to final agency actions, reversing those actions if they are `arbitrary, capricious or unreasonable or [if the action] is not supported by substantial credible evidence in the record as a whole.'" N.J. Soc'y for the Prevention of Cruelty to Animals v. N.J. Dep't of Agric., 196 N.J. 366, 384-85, 955 A.2d 886 (2008) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80, 410 A.2d 686 (1980)) (alteration in original). The New Jersey Supreme Court has held:
[A]n appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence.
In re Virtua-West Jersey Hosp. Voorhees, 194 N.J. 413, 422, 945 A.2d 692 (2008).
Furthermore, when an agency is authorized to interpret and apply a statute, it must do so "in a manner that is reasonable, not arbitrary or capricious, and not contrary to the evident purpose of the statute, that interpretation should be upheld, irrespective of how the forum court would interpret the same statute in the absence of regulatory history." Blecker v. State, 323 N.J.Super. 434, 442, 733 A.2d 540 (App.Div.1999), quoted in Reck v. Dir., Div. of Taxation, 345 N.J.Super. 443, 448, 785 A.2d 476 (App.Div.2001), aff'd, 175 N.J. 54, 811 A.2d 458 (2002). The GRC is authorized to interpret OPRA, see N.J.S.A. 47:1A-7(b), and this deferential standard has been applied to its holdings. See Fisher v. Div. of Law, 400 N.J.Super. 61, 70, 946 A.2d 53 (App.Div.2008).
The GRC is an administrative agency created to, among other things, adjudicate disputes concerning access to public records *792 under OPRA. See N.J.S.A. 47:1A-7(b) ("The Government Records Council shall. . . receive, hear, review and adjudicate a complaint filed by any person concerning a denial of access to a government record by a records custodian. . . ."). A party aggrieved by a custodian's decision to withhold requested records has the option to seek review of the custodian's decision in either the Superior Court or the GRC. N.J.S.A. 47:1A-6. The Council is empowered to render decisions "as to whether the record which is the subject of the complaint is a government record which must be made available for public access.. . ." N.J.S.A. 47:1A-7(e). The Council must "provide reasons for its rulings on each document." Paff v. N.J. Dep't of Labor, 379 N.J.Super. 346, 355, 878 A.2d 31 (App.Div.2005).
The GRC has the authority to review requested documents in camera in order to determine whether they were properly withheld. N.J.S.A. 47:1A-7(f) ("[T]he council may go into closed session during that portion of any proceeding during which the contents of a contested record would be disclosed."); see also Paff, supra, 379 N.J.Super. at 355, 878 A.2d 31. Such review is not required for every denial, but the Council should conduct in camera review "when necessary to resolution of the appeal." Paff, supra, 379 N.J.Super. at 355, 878 A.2d 31.
McGee claims that the GRC erred by relying upon a "personnel matters" exception to OPRA. McGee asserts that the Act only exempts "personnel records." According to McGee, the Council denied her access to government records based on an erroneous interpretation of OPRA.
We deem it irrelevant that the GRC used the phrase "personnel matters" instead of "personnel record," particularly because the Council cited to the proper statute in its decision. This inadvertent reference had no impact on the substance of the GRC's determination.
McGee's assertion that the term "personnel record" encompasses only those documents that would be contained in a personnel file merits closer examination. She claims that because "[n]one of the requested e-mails were contained in [her] personnel record or personnel file," they cannot fall under the umbrella of the "personnel records" exception.
OPRA defines "government record" very broadly:
"Government record" or "record" means any paper, written or printed book, document, drawing, map, plan, photograph, microfilm, data processed or image processed document, information stored or maintained electronically or by sound-recording or in a similar device, or any copy thereof, that has been made, maintained or kept on file in the course of his or its official business by any officer, commission, agency or authority of the State or of any political subdivision thereof, including subordinate boards thereof, or that has been received in the course of his or its official business by any such officer, commission, agency, or authority of the State or of any political subdivision thereof, including subordinate boards thereof.
[N.J.S.A. 47:1A-1.1.]
As is the case with other forms of communication, e-mails fall within the scope of this expansive provision. See, e.g., Wilson v. Brown, 404 N.J.Super. 557, 563, 962 A.2d 1122 (App.Div.), certif. denied, 198 N.J. 473, 968 A.2d 1189 (2009) (considering an OPRA request for e-mails); Fisher v. Div. of Law, supra, 400 N.J.Super. at 66, 946 A.2d 53 (same).
*793 However, this broad definition is tempered by a number of exceptions within OPRA itself. One such provision excludes "personnel or pension records," stating:
[T]he personnel or pension records of any individual in the possession of a public agency, including but not limited to records relating to any grievance filed by or against an individual, shall not be considered a government record and shall not be made available for public access. . . .
[N.J.S.A. 47:1A-10.]
While the statute limits this exception, it does not define precisely what information is covered by the phrase "personnel record." Although case law interpreting this provision is sparse, courts have tended to favor the protection of employee confidentiality.[4]
For example, in North Jersey Media Group, Inc. v. Bergen County Prosecutor's Office, 405 N.J.Super. 386, 964 A.2d 842 (App.Div.2009), we considered a newspaper's request for information regarding the outside employment of prosecutor's office employees. The trial court in that case determined that requests to engage in outside employment were so similar to the documents contained in personnel files that they deserved similar protection. Id. at 389, 964 A.2d 842. We affirmed, noting, "The dangers inherent in disclosure of confidential information for public dissemination are so obvious that we are compelled to conclude that the privacy interests of [prosecutorial] employees prevail over the public interest in disclosing the information." Id. at 391, 964 A.2d 842.
Similarly, in Michelson v. Wyatt, 379 N.J.Super. 611, 880 A.2d 458 (App.Div. 2005), we considered a request that demanded, among other things, documentation of individual insurance claims filed by employees of the city of Plainfield. Id. at 615-16, 880 A.2d 458. The custodian refused to provide any individualized information, and the trial court dismissed the requestor's ensuing claim. Id. at 616-17, 880 A.2d 458. Affirming this decision, we held that the requestor's right to access was outweighed by the employees' right to privacy. Id. at 625, 880 A.2d 458.
McGee's record request is far narrower than those considered in North Jersey Media Group and Michelson. She has not requested detailed information about a large group of public employees. Rather, she demands access to communications that she suspects concern her own job performance. Nonetheless, these communications implicate important privacy concerns. While a public employee's conduct is inherently open to a degree of public observation, it is reasonable for a public employee to expect conversations about his or her performance by his or her superiors to remain confidential. This applies regardless of whether any memorialization of these discussions physically enters an employee's personnel record.
Moreover, under our deferential standard of review, we give weight to the GRC's interpretation of OPRA. See, e.g., Blecker v. State, supra, 323 N.J.Super. at 442, 733 A.2d 540. The GRC's determination that the "personnel records" exception *794 is not limited to the items included in a personnel file is reasonable and does not run contrary to the purposes of OPRA. Despite the Act's broad objective of promoting disclosure, the balance tips in favor of protecting private personnel information regarding a particular employee. We find no error here.
McGee also avers that even if the communications in question are "personnel records," East Amwell may not withhold them once she has waived her right to confidentiality. Regarding all twelve emails withheld based on the "personnel records" exception, McGee states that she waives any such right. Furthermore, McGee claims that any personnel-related discussion of her required the use of a "Rice notice," which she never received. Therefore, McGee reasons, "By sending e-mails about me, and then declaring that they are a personnel matter which is exempt from disclosure, East [Amwell] Township Officials have denied me . . . my right to due process, and have violated the public policy of this state."
As a preliminary matter, McGee's reliance on "Rice notices" is misplaced. Those documents refer to the Senator Byron M. Baer Open Public Meetings Act[5] (OPMA), N.J.S.A. 10:4-6 to -21, and Rice v. Union County Regional High School Board of Education, 155 N.J.Super. 64, 382 A.2d 386 (App.Div.1977). The thrust of OPMA is that "no public body shall hold a meeting unless adequate notice thereof has been provided to the public." N.J.S.A. 10:4-9(a). "Meeting" is defined as follows:
[A]ny gathering whether corporeal or by means of communication equipment, which is attended by, or open to, all of the members of a public body, held with the intent, on the part of the members of the body present, to discuss or act as a unit upon the specific public business of that body. Meeting does not mean or include any such gathering (1) attended by less than an effective majority of the members of a public body, or (2) attended by or open to all the members of three or more similar public bodies at a convention or similar gathering.
[N.J.S.A. 10:4-8(b).]
In Rice, we considered a portion of OPMA allowing a public body to discuss personnel matters in a closed session unless all affected employees requested an open meeting. 155 N.J.Super. at 70-71, 382 A.2d 386 (considering N.J.S.A. 10:4-12(b)). We held that this provision obliged the public body to give affected employees adequate notice of the discussion, so that they would have the opportunity to "make a decision on whether they desire a public discussion and . . . prepare and present an appropriate request in writing." Id. at 73, 382 A.2d 386.
OPMA does not apply here. By its very terms, that act excludes any gathering "attended by less than an effective majority of the members of a public body. . . ." N.J.S.A. 10:4-8(b). The conversation here included, at most, three of the nine members of the Planning Board (Reilly, Tatsch and Gardner) and two of the five members of the Township Committee (Reilly and Tatsch), neither of which would constitute an "effective majority."
However, OPRA does include a provision relevant to McGee's claim. One caveat to the "personnel records" exception is that "personnel or pension records of any individual shall be accessible . . . when authorized by an individual in interest. . . ." N.J.S.A. 47:1A-10. McGee asserts that *795 she has expressly waived her right to confidentiality. Moreover, the act of filing a request for records containing her own personnel information may constitute an implied waiver. Regardless of whether this waiver is express or implied, we are concerned that a provision intended to protect public employees can be utilized to justify denying them access to information concerning their employment.
The GRC's interpretation runs contrary to the express legislative policy of OPRA, see Fisher v. Div. of Law, supra, 400 N.J.Super. at 70, 946 A.2d 53, which includes the "personnel records" exception purely to protect public employees. McGee may be entitled to access those four e-mails that the GRC has determined concern purely "personnel matters."
Unfortunately, this argument was not raised by McGee before the GRC. We deem it appropriate to remand to afford East Amwell the opportunity to present arguments against waiver before the GRC. On remand, the GRC shall determine whether McGee effectively waived the confidentiality accorded her by the "personnel records" exception or whether there are countervailing concerns or policies that would preclude release of the records.
McGee further asserts that neither the "personnel records" nor the "advisory, consultative, or deliberative" exception protects the requested e-mails because they include Wolfe as a sender or recipient. Because Wolfe's term on the Planning Board ended on December 31, 2006, "her status was that of a resident only," not a public official. Therefore, McGee urges that any communications in which Wolfe took part cannot be considered "inter-agency or intra-agency" pursuant to OPRA. We disagree.
OPRA exempts from the definition of "government record" any "inter-agency or intra-agency advisory, consultative, or deliberative material." N.J.S.A. 47:1A-1.1. Because this provision has long been understood to encompass the common-law deliberative process privilege, New Jersey courts "have turned to federal deliberative process jurisprudence . . . for guidance in ascertaining [its] scope. . . ." Educ. Law Ctr. ex rel. Abbott v. N.J. Dep't of Educ., 198 N.J. 274, 285, 966 A.2d 1054 (2009); see also In re Liquidation of Integrity Ins. Co., 165 N.J. 75, 83-84, 754 A.2d 1177 (2000) (using federal standards to define the deliberative process exemption).
"The deliberative process privilege `permits the government to withhold documents that reflect advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" Educ. Law Ctr., supra, 198 N.J. at 285, 966 A.2d 1054 (quoting Integrity, supra, 165 N.J. at 83, 754 A.2d 1177). The privilege exists "to ensure free and uninhibited communication within governmental agencies so that the best possible decisions can be reached. . . ." Id. at 286, 966 A.2d 1054 (citing Kaiser Aluminum & Chem. Corp. v. United States, 157 F.Supp. 939, 945-46 (Ct.Cl.1958)).
In order to claim the protection of this provision, a custodian must satisfy two requirements. Integrity, supra, 165 N.J. at 84-85, 754 A.2d 1177. First, the custodian must show that the document is "pre-decisional," or "generated before the adoption of an agency's policy or decision." Id. at 84, 754 A.2d 1177. Second, the custodian must establish that the document is "deliberative in nature, containing opinions, recommendations, or advice about agency policies." Id. at 84-85, 754 A.2d 1177. Satisfaction of these two prerequisites creates a "presumption of confidentiality," shifting the burden to the requestor to show that his or her *796 interest in disclosure outweighs the government's interest in confidentiality. Educ. Law Ctr., supra, 198 N.J. at 286-87, 966 A.2d 1054.
To determine the boundaries of "deliberative" material, the Court embraced the test formulated by the United States Court of Appeals for the District of Columbia in Mapother v. Department of Justice, 3 F.3d 1533, 1535 (1993). Educ. Law Ctr., supra, 198 N.J. at 294, 966 A.2d 1054. Under this formulation, "the key to identifying deliberative material must be how closely the material . . . relates to the `formulation or exercise of . . . policy-oriented judgment or [to] the process by which policy is formulated.'" Id. at 295, 966 A.2d 1054 (quoting Mapother, supra, 3 F.3d at 1539) (alteration and second omission in original).
Applying this reasoning to OPRA, the Court adopted a two-factor test. Ibid. The first factor is "whether the information sought is a part of the process leading to formulation of an agency's decision," regardless of whether the document contains fact or opinion; and the second is "the material's ability to reflect or to expose the deliberative aspects of that process." Ibid. In implementing this test, the Court took particular care to protect the "full and frank discussion of ideas when developing new policies, or in examining existing policies and procedures. . . ." Ibid. Allowing the public eye too far into the inner workings of policy-formulation, the Court reasoned, could prevent the best possible decision from being reached. Id. at 286, 966 A.2d 1054 (citing Kaiser Aluminum & Chem. Corp. v. United States, supra, 157 F.Supp. at 945-46).
Once again, we review the GRC's legal interpretation of OPRA under a deferential standard. See, e.g., Blecker v. State, supra, 323 N.J.Super. at 442, 733 A.2d 540. Adopting the findings and recommendations of its executive director, the GRC concluded
[T]he personnel matter which is the subject of the requested e-mails obviously began while Ms. Wolfe was chair of the Planning Board, involved . . . Planning Board matters and required Ms. Wolfe's continued involvement due to anticipated or on-going litigation including on-going negotiations with [McGee]'s attorney regarding said personnel matter.
As a result, the Council found it "conceivable that Ms. Wolfe's participation in the requested e-mails is essential" as a result of the official position that she had very recently held. The GRC concluded that communication about official government business in which a recent former official participated could nonetheless constitute "inter-agency or intra-agency" deliberation for the purposes of the OPRA.
Given the purpose and application of the deliberative process privilege, the Council's interpretation of the law is a reasonable accommodation to satisfy the intent of OPRA. The e-mails held subject to this privilege consist almost entirely of preparations for the upcoming Planning Board meeting, at which the participants intended to discuss McGee. As McGee's former supervisor, Wolfe's input on this issue was critical. Moreover, to hold that Wolfe's departure from public office precluded her from engaging in "advisory, consultative, or deliberative" communications would ignore the evolving nature of the policy-making process that this exception is intended to protect. We conclude that the Council correctly determined this issue.
The communications are protected under the threshold test enunciated in Integrity and the factors listed in Education Law Center. They were created in advance of an action by a public body, the Planning Board, rendering them "pre-decisional," and they contained "opinions, recommendations, *797 [and] advice" about what the policy of that body should be in the future. See Integrity, supra, 165 N.J. at 84-85, 754 A.2d 1177. Furthermore, the emails are clearly part of a "process leading to formulation" of a decision about the upcoming meeting, and absolutely "expose the deliberative aspects of that process" by spelling out the cumulative formulation of ideas among the participants. See Educ. Law Ctr., supra, 198 N.J. at 295, 966 A.2d 1054. To conclude otherwise would promote a chilling effect on the willingness of participants to share policy concerns and considerations in the sphere of their governmental activities.
We conclude that the Council correctly identified the relevant e-mails as protected under the OPRA exception for "advisory, consultative, or deliberative" documents.
The GRC exercised sound discretion in rejecting McGee's claims. The Council's broad interpretations of OPRA's "personnel records" and "advisory, consultative, or deliberative" exceptions are entirely consistent with the purposes of the statute. However, OPRA explicitly provides for the release of personnel records with the consent of the individual in question. Because East Amwell had no opportunity to present evidence before the GRC on this issue, we remand this case to the GRC solely to determine whether McGee effectively waived her right to confidentiality under OPRA as to those records so designated.
Affirmed in part, reversed and remanded in part. We do not retain jurisdiction.
NOTES
[1] The record is not clear as to Tatsch's position at the time. For purposes of this opinion, we assume from various references in the record that he was a member of the Township Committee. The accuracy of this assumption is irrelevant to our ultimate resolution of this appeal.
[2] For reasons that are not clear on the record, the Council only considered 19 e-mails, not the 20 previously referenced.
[3] On November 23, 2009, McGee filed an amended notice of appeal, but it contained no substantial changes.
[4] McGee urges this court to consider Asbury Park Press v. County of Monmouth, 201 N.J. 5, 986 A.2d 678 (2010), claiming it is analogous to the present matter. The Court held that OPRA requires disclosure of a settlement agreement regarding a sexual harassment lawsuit, despite a provision excluding "information generated . . . in connection with any sexual harassment complaint filed with a public employer," N.J.S.A. 47:1A-1.1. Asbury Park Press, supra, 201 N.J. at 6, 986 A.2d 678. While this determination may be instructive regarding general interpretation of OPRA, it has no bearing on our analysis of N.J.S.A. 47:1A-10.
[5] The statute specifically states that it is to be known and may be cited using the Senator's name. N.J.S.A. 10:4-6.