**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3643-21

ROTIMI A. OWOH, ESQ.
(O/B/O AFRICAN AMERICAN
DATA AND RESEARCH
INSTITUTE, and GRACE WOKO),

     Appellant,

v.

MAPLE SHADE POLICE
DEPARTMENT
(BURLINGTON),

     Respondent.

_____

Argued February 14, 2024 – Decided March 18, 2024

Before Judges Currier, Firko, and Vanek.

On appeal from the New Jersey Department of Community Affairs, Government Records Council, GRC Complaint No. 2021-64.

Rotimi A. Owoh argued the cause for appellant.

Donald Michael Doherty, Jr. argued the cause for respondent Maple Shade Police Department.

David Lawrence Disler argued the cause for amicus curiae New Jersey State Association of Chiefs of Police (Porzio, Bromberg & Newman, PC, attorneys; Vito Anthony Gagliardi, Jr., of counsel and on the brief; David Lawrence Disler and Weston J. Kulick, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent Government Records Council (George Norman Cohen, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Appellant Rotimi A. Owoh, who represents African American Data & Research Institute and Grace Woko, appeals from the Government Records Counsel's (GRC) final administrative determination denying his request for certain records under the New Jersey Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -131, and the common law right of access. We affirm.

I.

In item number five, which is the subject of this appeal, appellant requested respondent Maple Shade Police Department provide the "[n]ames, date of hire, date of separation and reason for separation and salary of individuals who either resigned or were terminated in the last [five] years from [the] police department." In response to his request, respondent's custodian of records sent a letter stating, "[t]he [T]ownship requests a clarification on your

2

request and what records you are requesting. When you state individuals who 'resigned' are you requesting information on individuals who retired or those who separated from the agency for other reasons[?]"

That day, appellant emailed the custodian with his clarification, which stated: "Item 5: All separations—reasons for the separations (employment terminations) in the last [five] years. Includes resigned, fired, retired, etc." To accommodate appellant's request, the custodian reviewed respondent's files and provided an Excel spreadsheet containing the requested information.

The spreadsheet was divided into headings, which included employee identification, employee status, date of hire, date of termination, position title, employment type, pay type, and pay rate, and included responses such as "resigned," "terminated," or "retired" as the reasons why the police officers separated from respondent.

Thereafter, appellant filed a denial of access complaint with the GRC contending the words "terminated," "resigned," and "retired" do not disclose the "real reasons" for each police officer's separation. Appellant asserted the non-response violated OPRA, and he sought to have the custodian comply with his request. In his complaint, appellant alleged the "real reason" for a police

officer's separation may be the result of a plea agreement or sentence, which is subject to disclosure under OPRA and <u>Libertarians</u>.[1]

According to appellant, respondent did not want to provide the "real reasons" for separation "due to the pervasive culture and predisposition to protect officers convicted of misconduct," and providing single word descriptions was "only partially truthful" and did not "promote OPRA's goal of transparency." Appellant also contended he should be granted access to the records under the common law right of access.[2]

The custodian filed a statement of information (SOI) in opposition to the complaint. The custodian certified that (1) appellant's OPRA request was received on December 16, 2020; (2) the custodian reached out to respondent's finance officer for documents on file that contained the personnel information requested and found the data within an electronic document entitled "Pivotal Earnings Detail" that was used to prepare the spreadsheet; and (3) the custodian responded to appellant's request in writing on February 10, 2021, providing the

---

[1]  <u>Libertarians for Transparent Gov't v. Cumberland Cnty.</u>, 250 N.J. 46, 54 (2022).

[2]  The GRC did not consider this argument because the GRC has jurisdiction only over OPRA requests, and not common law claims for public records. N.J.S.A. 47:1A-7(b); <u>A.A. v. Gramiccioni</u>, 442 N.J. Super. 276, 282 n.4 (App. Div. 2015).

A-3643-21

requested information in accordance with the OPRA statute and <u>Libertarians</u>. Respondent contended that personnel records were not government records and have been afforded greater protection from public access than other public records, citing N.J.S.A. 47:1A-10.

Respondent also asserted that agencies are only required to disclose "identifiable records" under the controlling case law, and appellant was asking the custodian to perform research to ascertain whether any of the officers' separations were "compelled by" a plea bargain or conviction. Respondent contended its custodian was not required to "correlate data amongst various government records."

On July 19, 2022, GRC's Executive Director issued findings and recommendations relative to appellant's denial of access complaint. The Executive Director found the facts in this matter were distinguishable from <u>Libertarians</u> because there, the plaintiffs expressly requested the settlement agreement, which contained the basis for the employee's resignation. In contrast, the Executive Director noted that here, appellant requested "the reasons for separation," but did not request any settlement or plea agreements or any other <u>record</u> that may relate to an officers' separation. Accordingly, the Executive Director concluded respondent's custodian did not unlawfully deny

appellant's OPRA request and was not obligated to provide records that were not requested.

At the GRC's July 26, 2022 public meeting, after reviewing the Executive Director's findings and recommendations, and documentation submitted by the parties, the GRC issued its final decision stating:

> The custodian did not unlawfully deny access to [appellant's] OPRA request seeking the "[n]ames, date of hire, date of separation and reason for separation and salary of individuals who either resigned or were terminated in the last [five] years from your police department." N.J.S.A. 47:1A-6. The custodian provided [appellant] with the "reason[s] for separation" in accordance with N.J.S.A. 47:1A-10 and Libertarians, and was not obligated to provide records that were not requested by [appellant].

On appeal, appellant contends that in light of our Court's holding in Libertarians, he does not have to accept the Excel spreadsheet stating "resigned," "retired," or "terminated" as the reasons for separation, and under OPRA, he has the right to inspect redacted copies of the actual records, specifically plea agreements and criminal convictions. Appellant also argues he is entitled to the real reasons for separation under the common law right of access even if the misconduct did not result in a criminal conviction or a plea agreement.

Respondent counters there was no OPRA violation because appellant not only failed to request a record, but he also failed to provide a description of what

6

record would be responsive. Amicus curiae New Jersey Association of the Chiefs of Police contends OPRA does not require custodians to determine the "real reasons" for why government action was taken, and that custodians are not required to conduct a subjective analysis in response to an OPRA request, but only retrieve specifically maintained records.

## II.

Our review of the GRC's decision "is governed by the same standards as review of a decision by any other state agency." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Fisher v. Div. of Law, 400 N.J. Super. 61, 70 (App. Div. 2008)). We "will not overturn an agency's decision unless it violates express or implied legislative policies, is based on factual findings that are not supported by substantial credible evidence, or is arbitrary, capricious or unreasonable." Fisher, 400 N.J. Super. at 70. This court's standard of review is "plenary with respect to" the GRC's interpretation of OPRA. Asbury Park Press of Monmouth, 406 N.J. Super. 1, 6 (App. Div. 2009).

But under this "deferential standard of review, [this court] give[s] weight to the GRC's interpretation of OPRA." McGee v. Twp. of E. Amwell, 416 N.J. Super. 602, 616 (App. Div. 2010). We apply the same standard of review "to the court's legal conclusions with respect to whether access to public records is

appropriate under the common law right of access." Drinker Biddle & Reath, LLP v. N.J. Dep't of Law and Pub. Safety, 421 N.J. Super. 489, 497 (App. Div. 2011).

OPRA was enacted "to promote transparency in the operation of government." Sussex Commons Assocs., LLC v. Rutgers, 210 N.J. 531, 541 (2012). In passing OPRA,

> the [l]egislature declared it public policy that government records "shall be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest," and that any limitation of the right of action accorded by OPRA "shall be construed in favor of the public's right[-]of[-] access."
>
> [Paff v. Ocean Cnty. Prosecutor's Off., 235 N.J. 1, 17-18 (2018) (quoting N.J.S.A. 47:1A-1).]

"A [g]overnment record" has been broadly defined by OPRA to include any record "made, maintained or kept on file in the course of . . . its official business by any officer, commission, agency or authority of the State or of any political subdivision thereof," or any record "received in the course of . . . its official business by any such officer, commission, agency, or authority of the State or of any political subdivision thereof." N.J.S.A. 47:1A-1.1. "As further expansion of the public's right of access, OPRA places the burden of proof on the government to show that a requested record may be withheld under an

exemption or exclusion from the disclosure requirement." <u>Asbury Park Press</u>, 406 N.J. Super. at 7 (citing N.J.S.A. 47:1A-6).

Although "[t]he statute broadly defines the term 'government record,'" it "also calls for a careful balancing of competing interests—the right of access to government records versus the need to protect personal information." <u>Libertarians</u>, 250 N.J. at 54 (citing <u>Burnett v. Cnty. of Bergen</u>, 198 N.J. 408, 414 (2009)). OPRA provides specific exclusions from the disclosure requirement. In particular, N.J.S.A. 47:1A-10 specifies that "the personnel or pension records of any individual in the possession of a public agency, including but not limited to records relating to any grievance filed by or against an individual, shall not be considered a government record and shall not be made available for public access."

However, N.J.S.A. 47:1A-10 includes the following exceptions:

> (1) an individual's name, title, position, salary, payroll record, length of service, date of separation and the reason therefor, and the amount and type of any pension received shall be a government record;
>
> (2) personnel or pension records of any individual shall be accessible when required to be disclosed by another law, when disclosure is essential to the performance of official duties of a person duly authorized by this State or the United States, or when authorized by an individual in interest; and

9

(3) data contained in information which disclose conformity with specific experiential, educational or medical qualifications required for government employment or for receipt of a public pension, but not including any detailed medical or psychological information, shall be a government record.

Although OPRA "does not define precisely what information is covered by the phrase 'personnel record,' . . . courts have tended to favor the protection of employee confidentiality." McGee, 416 N.J. Super. at 615; but see Asbury Park Press, 406 N.J. Super at 9 (holding that OPRA grants the public the right to access settlement agreements that resolve civil litigation between a government agency and its employee).

We note "agencies are only obligated to disclose identifiable government records." Burke v. Brandes, 429 N.J. Super. 169, 174 (App. Div. 2012). "A proper request 'must identify with reasonable clarity those documents that are desired.'" Ibid. (quoting Bent v. Twp. of Stafford Police Dep't, 381 N.J. Super. 30, 37 (App. Div. 2005)).

"'Wholesale requests for general information to be analyzed, collated[,] and compiled' by the agency are outside OPRA's scope." Ibid. (quoting MAG Entm't, LLC v. Div. of Alcoholic Beverage Control, 375 N.J. Super. 534, 549 (App. Div. 2005)). "OPRA does not countenance open-ended searches of an agency's files" and is not "intended as a research tool litigants may use to force

10

government officials to identify and siphon useful information." MAG Entm't, 375 N.J. Super. at 546, 549.

As such, requests for "any and all documents" on a specific subject are deemed "overly broad." Spectraserv, Inc. v. Middlesex Cnty. Utils. Auth., 416 N.J. Super. 565, 577, 578 (App. Div. 2010). To properly decide if a request would be considered research, the court must determine whether it demands the agency engage in analysis or "'the exercise of judgment in identifying responsive records.'" Simmons v. Mercado, 247 N.J. 24, 44 (quoting Burke, 429 N.J. Super. at 177).

OPRA permits requests for documents already created or on file with a public entity. N.J.S.A. 47:1A-1.1. But, OPRA does not require a public agency to create documents not already in existence. Sussex Commons Assocs., 210 N.J. at 544. "[I]f a request 'would substantially disrupt agency operations, the custodian may deny access to the record after attempting to reach a reasonable solution with the requestor that accommodates the interests of the requestor and the agency.'" Burke, 429 N.J. Super. at 174 (quoting N.J.S.A. 47:1A-5(g)).

Here, appellant contends that he is entitled to the "real reasons" behind the officers' separations based on precedent set forth in Libertarians. In Libertarians, the plaintiff submitted an OPRA request that primarily sought

copies of a Preliminary Notice of Disciplinary Action (PNDA), a settlement agreement, and a correction officer's "name, title, position, salary, length of service, date of separation, and the reasons therefore in accordance with N.J.S.A. 47:1A-10." 250 N.J. at 48, 50. The defendants declined the plaintiff's request, claiming that it was a personnel record exempt from access. Id. at 49. Instead, the defendants provided the plaintiff with other details and stated that the officer was "charged with a disciplinary action and was terminated." Ibid.

Our Court conducted an interpretive analysis of "the plain language of Section 10," which addresses personnel records. According to Section 10, personnel or pension records "shall not be considered a government record and shall not be made available for public access." Ibid. One exception to Section 10 is that "an individual's name, title, position, salary, payroll record, length of service, date of separation and the reason therefor, and the amount and type of any pension received shall be a government record." Ibid.

Based on those principles, our Court ultimately found that the plaintiff was entitled to the settlement agreement because "[u]nder Section 10, the reasons [the individual] separated from government qualify as a 'government record.' [And], [a] settlement agreement that includes those details must be therefore made available to the public once it is redacted." Id. at 58.

12

But, here appellant did not ask for specific documents. He only requested general information. Although appellant's request referred to "All separations—reasons for the separations" in the last five years, his original and revised clarified request never identified any government records and never clearly and reasonably described with sufficient identifying information what records he was seeking. In fact, appellant first mentioned specific documents—plea agreements and criminal convictions—in his cover letter attached to the denial of access complaint he filed with the GRC. The record is clear that appellant did not request specific government records when he made his OPRA request or when he clarified his request. And, as stated in amicus's brief, appellant continues to have the ability to request the government records he now claims he wants.

Under OPRA, a requester is obligated to describe the government record sought in fairly specific terms. See Gannett N.J. Partners v. Middlesex, 379 N.J. Super. 205, 212 (App. Div. 2005); Johnson & Connell, New Jersey Open Public Records & Meetings, § 13.6 (2023). The fundamental reason OPRA contains this specificity requirement is to enable custodians to comply with their obligations under the statute. See N.J. Bldrs. Ass'n v. COAH, 390 N.J. Super.

166, 177-78 (App. Div. 2007). As our Court elaborated in <u>Paff v. Galloway Twp.</u>, 229 N.J. 340, 355-56 (2017):

> A records request must be well defined so that the custodian knows precisely what records are sought. The request should not require the records custodian to undertake a subjective analysis to understand the nature of the request. Seeking particular information from the custodian is permissible; expecting the custodian to do research is not.

See also <u>Conley v. Dept. of Corrections</u>, 452 N.J. Super. 605, 612 (App. Div. 2018) (stating also that custodians are not obligated to conduct research in response to a vague or poorly described request).

Indeed, the fact that the custodian of records in this case actually performed a search and prepared a spreadsheet in an effort to respond to appellant's request belies any assertion that OPRA was violated. Appellant did not request any records at all. Absent that request, the custodian provided appellant what he asked for—the reasons for separation.

Lacking any direction from appellant in his request as to specific records being sought, the custodian would have to research and analyze a data base. As stated, it is not the custodian's burden to do so. Upon receiving the request, respondent's custodian asked for clarification and prepared a spreadsheet, providing the information it had. We are satisfied the GRC did not abuse its

14                                                                                    A-3643-21

discretion when it found the custodian provided appellant with the "reasons for separation" in accordance with N.J.S.A. 47:1A-10 and Libertarians.

### III.

Alternatively, appellant contends the "real reasons" for each one of the listed separations is subject to disclosure under the common law right of access. According to appellant, he has a strong interest in making sure that "the few bad police officers do not keep moving from one police department to another police department since Black folks like GEORGE FLOYD of Minnesota are the NORMAL victims of the few bad police officers." (Emphasis in original).

As noted by the GRC, its jurisdiction is limited to interpreting the OPRA statute. The GRC has no jurisdiction over claims of common law right of access. See L.R. v. Camden City Sch. Dist., 452 N.J. Super. 56, 94 (App. Div. 2017); John & Connell, New Jersey Open Public Records & Meetings § 15:3-1 (2023).

Jurisdiction under the common law right of access lies in the Law Division, not the GRC. Serrano v. S. Brunswick Twp., 358 N.J. Super. 352, 373 (App. Div. 2003) (Coburn, J., concurring). Thus, the GRC correctly concluded it did not have authority to address appellant's common law right of access claim.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15