SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the
convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the
interest of brevity, portions of any opinion may not have been summarized.)

 In the Matter of the New Jersey Firemen’s Association Obligation to Provide
 Relief Applications Under the Open Public Records Act (A-68-15) (077097)

Argued January 18, 2017 -- Decided August 3, 2017

SOLOMON, J., writing for the Court.

 The issue in this appeal is whether, after a public entity denies a citizen’s record request, the New Jersey
Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and the common law right of access preclude the public
entity from instituting a proceeding under the Declaratory Judgment Act (DJA), N.J.S.A. 2A:16-50 to -62. The
Court also decides whether the records sought in this case—financial relief checks that the New Jersey Firemen’s
Association (Association) issued to one of its members, John Doe—are exempt from disclosure under OPRA and
the common law right of access.

 Plaintiff Jeff Carter submitted a request for the Association to release Doe’s financial relief application and
supporting documentation, as well as the relief checks the Association provided to Doe. Carter’s motivation for the
request was to publicize the fact that Doe had been charged with endangering the welfare of a child and
consequently resigned from his position with the Millstone Valley Fire Department. It was Carter’s belief that Doe
should not “receiv[e] hardship benefits for behavior that appear[ed] to be caused entirely by [Doe’s] own actions.”

 The vice president of the Association denied Carter’s request via e-mail, stating that relief applicants have a
reasonable expectation of privacy that would be violated if their application materials, which contain detailed
personal financial information, were disclosed. In an e-mail response, Carter reiterated that, because he did not seek
any “legitimately defined privileged or exempt information,” the Association was obligated to release the requested
financial records with the appropriate redactions. The Association refused to disclose Doe’s records, claiming the
detailed personal financial information contained in the application raised privacy concerns.

 When efforts to amicably resolve the matter proved unsuccessful, the Association filed a declaratory
judgment complaint and proposed order to show cause to establish its obligation to disclose the financial records that
Carter requested. The trial court agreed with the Association that applicants have a personal right of privacy in their
relief applications and entered the Association’s order to show cause. After retaining counsel, Carter filed his
opposition to the order to show cause, seeking dismissal of the complaint and arguing that the Association’s
declaratory judgment action was barred by section 6 of OPRA, N.J.S.A. 47:1A-6, which vests the right to institute
proceedings relating to OPRA solely in the records requestor.

 The trial court reviewed in camera Doe’s financial relief application and, after oral argument, denied
Carter’s request for dismissal. After applying the seven factors outlined in Burnett v. County of Bergen, 198 N.J.
408, 427 (2009) (adopting factors announced in Doe v. Poritz, 142 N.J. 1, 88 (1995), to analyze OPRA), the court
held that OPRA’s privacy exemption barred release of relief applications, names of applicants, and amounts paid
through the Association’s financial assistance programs. The court then balanced the six factors set forth in
Loigman v. Kimmelman, 102 N.J. 98, 113 (1986), and determined that the common law did not require disclosure.

 Appearing pro se, Carter appealed. The Appellate Division reversed, holding that OPRA provides the
exclusive remedy in cases involving public records requests and that the Legislature made clear that only requestors
are entitled to seek review of OPRA decisions. 443 N.J. Super. 238, 245 (App. Div. 2015). In addition, the
Appellate Division found that neither OPRA’s privacy exemption, nor the privacy considerations encompassed in
the common law right of access, could shield Doe’s payment records. Id. at 269.

 The Court granted the Association’s petition for certification. 224 N.J. 528 (2016).

HELD: OPRA does not, in all instances, prohibit a public entity from instituting proceedings under the Declaratory
Judgment Act to determine whether records are subject to disclosure. After carefully balancing the public’s interest
in accessing information against the private interest in confidentiality, the Court finds that the relief checks to Doe
are exempt from disclosure under OPRA and the common law right of access.
1. By vesting New Jersey courts with the “power to declare rights, status and other legal relations, whether or not
further relief is or could be claimed,” N.J.S.A. 2A:16-52, the DJA provides all individuals and organizations, public
or private, with a forum to present bona fide legal issues to the court for resolution, N.J.S.A. 2A:16-53. A
declaratory judgment claim is ripe for adjudication only when there is an actual controversy, meaning that the facts
present concrete contested issues conclusively affecting the parties’ adverse interests. There is ordinarily no reason
to invoke the provisions of the DJA where another adequate remedy is available. (pp. 13-16)

2. OPRA was designed to promote transparency in the operation of government and makes all government records
presumptively accessible to the public unless an exemption applies. N.J.S.A. 47:1A-1. OPRA’s twenty-one
exemptions are to be “construed in favor of the public’s right of access[.]” N.J.S.A. 47:1A-1. If a records request is
denied, section 6 of OPRA provides that the requesting party may “institute a proceeding to challenge the
custodian’s decision by filing an action in Superior Court” or with the Government Records Council. N.J.S.A.
47:1A-6. (pp. 16-17)

3. OPRA recognizes a privacy exception by requiring public agencies “to safeguard from public access a citizen’s
personal information” when “disclosure thereof would violate the citizen’s reasonable expectation of privacy.”
N.J.S.A. 47:1A-1; Burnett, supra, 198 N.J. at 414, 427-28. When OPRA’s privacy exemption is at issue, the Burnett
seven-factor balancing test is applied to determine whether the citizen’s interest in privacy outweighs the public’s
interest in governmental transparency. (pp. 17-18)

4. The DJA provides broad access to our courts as a means by which rights, obligations and status may be
adjudicated in cases involving a controversy that has not yet reached the stage at which either party may seek a
coercive remedy. Conversely, OPRA limits access to the courts by conferring the right to initiate a suit only upon
the requestor, after a public agency’s denial of access. N.J.S.A. 47:1A-6. Here, The Association and Carter had
“genuine differences” as to the Association’s duty to disclose under OPRA. However, the Association’s denial of
access extinguished the controversy because the Association had determined its legal obligation with regard to the
relief checks. At that point, it was not appropriate for the Association to rely on the DJA because the controversy
had reached a stage at which Carter could seek a coercive remedy by way of section 6 of OPRA. Section 6 of
OPRA’s special procedure for review of an agency’s denial must prevail over the general DJA statute. After an
agency has denied a request, only the requestor may seek judicial review of the agency’s decision. (pp. 19-20)

5. Although the Court determines that the Association’s DJA action is moot, in the interest of judicial economy, it
nevertheless decides whether OPRA’s privacy exception applies to the relief checks issued to Doe. As this case
presents a clash between two of OPRA’s key competing interests—disclosure and protection of privacy interests—
the Court applies the seven-factor test adopted in Burnett. Because all factors weigh in favor of non-disclosure, the
Association properly denied Carter’s request in order to protect Doe’s privacy interest in the records. (pp. 21-23)

6. Like OPRA, when confidentiality concerns are raised under the common law right of access, courts balance the
requestor’s interest in disclosure against the government’s interest in confidentiality. Loigman, supra, 102 N.J. at
108. A balancing of the six Loigman factors in this case militates against disclosure. On balance, the public’s
interest in access does not outweigh the Association’s interest in non-disclosure. The Court finds that the dangers
inherent in disclosure of confidential information for public dissemination are so obvious that Doe’s privacy interest
prevails over the public interest in disclosing the information. (pp. 23-27)

 The judgment of the Appellate Division is REVERSED.

 JUSTICE ALBIN, CONCURRING, expresses the view that OPRA governs a records request, whether a
public entity’s records custodian denies the request or does not respond to the request. In other words, a records
custodian, who intends to deny a records request but does not verbalize the denial, cannot invoke the DJA to do an
end run around the dictates of OPRA.

 CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA
and TIMPONE join in JUSTICE SOLOMON’s opinion. JUSTICE ALBIN filed a separate, concurring
opinion.

 2
 SUPREME COURT OF NEW JERSEY
 A-68 September Term 2015
 077097

IN THE MATTER OF THE NEW
JERSEY FIREMEN’S ASSOCIATION
OBLIGATION TO PROVIDE RELIEF
APPLICATIONS UNDER THE OPEN
PUBLIC RECORDS ACT

JEFF CARTER,

 Third-Party
 Plaintiff-Respondent,

 v.

JOHN DOE,

 Third-Party
 Defendant.

 Argued January 18, 2017 – Decided August 3, 2017

 On certification to the Superior Court,
 Appellate Division, whose opinion is
 reported at 443 N.J. Super. 238 (App. Div.
 2015).

 John C. Gillespie and George M. Morris
 argued the cause for appellant New Jersey
 State Firemen’s Association (Parker McCay,
 attorneys; Stacy L. Moore, Jr., on the
 briefs).

 C.J. Griffin argued the cause for respondent
 Jeff Carter (Pashman Stein, attorneys; C.J.
 Griffin and Walter M. Luers, of counsel and
 on the briefs).

 Thomas J. Cafferty argued the cause for
 amicus curiae New Jersey Press Association
 (Gibbons, attorneys; Thomas J. Cafferty, Nomi I.
 Lowy, and Lauren James-Weir, on the briefs).

 1
 JUSTICE SOLOMON delivered the opinion of the Court.

 We are asked to decide whether, after a public entity

denies a citizen’s record request, the New Jersey Open Public

Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and the common law

right of access preclude the public entity from instituting a

proceeding under the Declaratory Judgment Act (DJA), N.J.S.A.

2A:16-50 to -62. We also decide whether the records sought in

this case -- financial relief checks that the New Jersey

Firemen’s Association (Association) issued to one of its

members, John Doe1 -- are exempt from disclosure under OPRA and

the common law right of access.

 A month after the Appellate Division declared the

Association to be a “public entity,” Paff v. N.J. State

Firemen’s Ass’n, 431 N.J. Super. 278, 290 (App. Div. 2013),

plaintiff Jeff Carter submitted a request for the Association to

release Doe’s financial relief application and supporting

documentation, as well as the relief checks the Association

provided to Doe. The Association refused, contending that

disclosure would compromise the reasonable expectation of

privacy that applicants, such as Doe, have when seeking its

1 The requested records identified John Doe by name, but the name
is redacted in the public record on appeal.
 2
assistance. Carter renewed his request, claiming he was

entitled to certain payroll records with appropriate redactions.

 The Association responded by filing a declaratory judgment

action to obtain a judicial determination of its

responsibilities under OPRA when it is asked to disclose the

personal financial information of its members. Carter answered,

counterclaimed, and filed a third-party complaint against Doe.

At that point, Carter narrowed his records request to the relief

checks paid to Doe.

 The trial court found that, under OPRA and the common law,

Doe’s privacy interest outweighed the public’s interest in

disclosure. The Appellate Division reversed and held that the

Association’s DJA complaint was improper because OPRA

exclusively vests the requestor, not the custodian, with the

right to institute a proceeding. The Appellate Division also

determined that Doe’s privacy interest was not substantial

enough to outweigh the public’s interest in government

transparency.

 We reverse the judgment of the Appellate Division and

conclude that OPRA does not, in all instances, prohibit a public

entity from instituting proceedings under the DJA to determine

whether records are subject to disclosure. In addition, after

carefully balancing the public’s interest in accessing

information against the private interest in confidentiality, we

 3
find that the relief checks to Doe are exempt from disclosure

under OPRA and the common law right of access.

 I.

 The record before us reveals the following. Statutorily

created in 1885, L. 1885, c. 122, § 24, the Association is

vested with the mission to provide welfare and death benefits to

qualified active and retired volunteer, part-time, and paid

firefighters and their families. Until June 2013, the

Association operated as a private entity. Paff, supra, 431 N.J.

Super. at 290.

 A month after it was designated a “public agency,” ibid.,

the Association received its first OPRA request, in which Carter

sought the following:

 1. Copies of record(s) (including attachments)
 submitted by [Doe], Local 501 agent(s), and/or
 NJSFA agent(s) seeking financial benefits
 described in the “BACKGROUND” section above
 from January 1, 2008 through July 15, 2013.
 2. Copies of record(s) (including attachments)
 sent to [Doe], Local 501 agent(s), and/or
 NJSFA agent(s) disbursing financial benefits
 described in the “BACKGROUND” section above
 from January 1, 2008 through July 15, 2013.
 3. If no record(s) are responsive to Items No.
 1 or 2 above, then copies of the front and
 back of every check providing relief and/or
 similar benefits, both State and Local, paid
 to [Doe] between January 1, 2008 through July
 15, 2013. (Note that checks are not required
 if responsive records are provided for Items
 No. 1 and 2 above.)

 4
Carter’s motivation for the request was to publicize the fact

that Doe had been charged with endangering the welfare of a

child and consequently resigned from his position with the

Millstone Valley Fire Department. It was Carter’s belief that

“hardship benefits are limited and are designed for those who

did not directly contribute to and/or cause their resulting need

for [such] benefits.” Thus, Carter determined that it would be

“an insult to deserving firefighters and their families” who

justly acquire benefits if Doe was “receiving hardship benefits

for behavior that appear[ed] to be caused entirely by [Doe’s]

own actions.”

 Five days later, the vice president of the Association

denied Carter’s request via e-mail, stating that relief

applicants have a reasonable expectation of privacy that would

be violated if their application materials, which contain

detailed personal financial information, were disclosed.

 In an e-mail response, Carter reiterated that, because he

did not seek any “legitimately defined privileged or exempt

information,” the Association was obligated to release the

requested financial records with the appropriate redactions.

Carter also renewed his original request by stating that “the

timeframe for my original request will resume on the next

business day.” Carter concluded his e-mail with a request for a

 5
copy of the policy and/or procedures governing how the

Association processes relief applications.

 The Association disclosed to Carter its program guidelines,

the instructions it provides to prospective applicants, and

other general materials describing the manner in which its Board

of Trustees reviews applications. The Association refused to

disclose Doe’s records, claiming the detailed personal financial

information contained in the application raised privacy

concerns. Moreover, the Association claimed its application

materials led applicants to believe that the entrusted

information would remain confidential.

 When efforts to amicably resolve the matter proved

unsuccessful, the Association filed a declaratory judgment

complaint and proposed order to show cause to establish its

obligation to disclose the financial records that Carter

requested. Specifically, Count One of the complaint sought an

order:

 a. Declaring that individual relief
 applications are of such a private nature that
 the [] Association or the local relief
 association shall be prevented from
 acknowledging the existence of individual
 applications and prohibited from releasing the
 same under . . . [OPRA];
 b. Declaring that a Requestor, in order to
 determine whether the [] Association or the
 local relief association is performing its
 duties appropriately, may request a series or
 date range of applications, but said

 6
 applications may only be released upon the
 redaction of all personal information
 including the requestors’ names, addresses,
 [and] account numbers.
The second count sought identical relief under the common law

right of access. The Association maintained that the records

were exempt from disclosure under both OPRA and the common law

because disclosure would violate Doe’s reasonable expectation of

privacy. The Association also sought an order compelling Carter

to demonstrate why Doe’s financial records were not exempt from

disclosure.

 The trial court agreed with the Association that applicants

have a personal right of privacy in their relief applications

and entered the Association’s order to show cause. After

retaining counsel, Carter filed his opposition to the order to

show cause, seeking dismissal of the complaint and arguing that

the Association’s declaratory judgment action was barred by

section 6 of OPRA, N.J.S.A. 47:1A-6, which vests the right to

institute proceedings relating to OPRA solely in the records

requestor. Carter also filed a counterclaim and a third-party

complaint against Doe.2 At that point, Carter further narrowed

the scope of documents he sought to copies of checks issued to

Doe.

2 Doe never responded to the third-party complaint.
 7
 In a supporting certification, Carter claimed that Doe was

an elected fire commissioner and volunteer firefighter who was

discharged for conduct unbecoming a township employee. Thus,

according to Carter, Doe’s privacy interest could not outweigh

the public’s interest in knowing whether the Association

provided financial assistance to a government employee

discharged for inappropriate conduct.

 In a responsive certification, the Association’s vice

president explained that the organization’s goal is to provide

qualifying members with relief after an anonymous, non-

discriminatory application evaluation process that protects the

members’ privacy and dignity during their time of need.

 The trial court reviewed in camera Doe’s financial relief

application and, after oral argument, denied Carter’s request

for dismissal. After applying the seven factors outlined in

Burnett v. County of Bergen, 198 N.J. 408, 427 (2009) (adopting

factors announced in Doe v. Poritz, 142 N.J. 1, 88 (1995), to

analyze OPRA), the court held that OPRA’s privacy exemption

barred release of relief applications, names of applicants, and

amounts paid through the Association’s financial assistance

programs. The court then balanced the six factors set forth in

Loigman v. Kimmelman, 102 N.J. 98, 113 (1986), and determined

that the common law did not require disclosure. The court also

denied Carter’s request for attorney’s fees under OPRA.

 8
 Appearing pro se, Carter appealed. The Appellate Division

reversed, holding that OPRA provides the exclusive remedy in

cases involving public records requests and that the Legislature

made clear that only requestors are entitled to seek review of

OPRA decisions. In re N.J. Firemen’s Ass’n Obligation to

Provide Relief Applications Under Open Public Records Act, 443

N.J. Super. 238, 245 (App. Div. 2015). The Appellate Division

found that neither OPRA’s privacy exemption, nor the privacy

considerations encompassed in the common law right of access,

could shield Doe’s payment records. Id. at 269. The Appellate

Division remanded the matter for a determination of attorney’s

fees.3 Id. at 271.

 In a concurring opinion, Judge Messano expressed his belief

that the majority was unnecessarily “paint[ing] with . . . a

broad brush” because there could be circumstances in which it

would be appropriate for a public agency to seek declaratory

relief. Id. at 273, 275 (Messano, P.J.A.D, concurring).

 We granted the Association’s petition for certification.

224 N.J. 528 (2016). The New Jersey Press Association (NJPA),

which appeared as amicus curiae in the Appellate Division,

retained its amicus status pursuant to Rule 1:13-9(d).

 II.

3 The amount of attorney’s fees was subsequently settled, but
payment was stayed pending this appeal.
 9
 A.

 The Association acknowledges that OPRA’s function is to

make identifiable government records “readily accessible for

inspection, copying, or examination.” N.J.S.A. 47:1A-1.

Additionally, the Association concedes that section 6 of OPRA

prohibits record custodians from instituting OPRA suits, a right

exclusively reserved for requestors.

 However, the Association emphasizes that, as a public

agency, it “has a responsibility and an obligation to safeguard

from public access a citizen’s personal information with which

it has been entrusted when disclosure thereof would violate the

citizen’s reasonable expectation of privacy.” N.J.S.A. 47:1A-1.

The Association observes that, although OPRA attempts to strike

a balance between the competing interests of citizens’ privacy

and government transparency, it fails to instruct public

agencies on how to execute their duties without violating

citizens’ privacy rights. The Association states that it

accordingly availed itself of the DJA both to determine the

legality of disclosing applicant information in response to

Carter’s request and to ensure that firefighters in need can

apply for benefits without fear that the sensitive information

in their financial and/or medical records could one day be

disclosed to the public.

 10
 The Association maintains that OPRA can be readily squared

with the DJA because OPRA does not expressly, or even impliedly,

prohibit a public agency from filing a complaint under the DJA.

Rather, the Association interprets section 6 of OPRA to

foreclose custodians from “institut[ing] any proceeding under

this section.” N.J.S.A. 47:1A-6 (emphasis added).

Specifically, the Association argues that “under this section”

refers to Title 47 of the New Jersey Statutes, which deals

exclusively with OPRA, and not to statutory provisions contained

in other titles -- such as the DJA, which appears under Title

2A. Contrary to the Appellate Division’s opinion, the

Association finds it implausible that the Legislature would have

intended to bar public agencies’ access to the judicial system

when a genuine justiciable dispute arises, even if the issue

relates to OPRA. The Association warns that, under the

Appellate Division’s interpretation of OPRA, public agencies are

“sitting duck[s]” left with no alternative but to wait to be

sued and potentially “hit with substantial prevailing party

fees.”

 B.

 Carter asserts that the plain language of section 6 of OPRA

makes clear that only the requestor holds the right to initiate

proceedings regarding a public agency’s decision to provide

public access to records. Carter argues that, when a public

 11
agency is unsure whether disclosure would violate a citizen’s

reasonable expectation of privacy, OPRA clearly dictates that

the agency has two options: (1) release the record as a

governmental record, or (2) deny access pursuant to one of

OPRA’s enumerated exemptions. Thus, Carter maintains that the

Association had no legal right, even under the DJA, to seek

judicial guidance in this case.

 Carter accuses the Association of focusing too heavily on

the language “under this section” in section 6. According to

Carter, the proper point of emphasis in section 6 is that the

right to institute “any proceeding” belongs to the requestor.

Carter interprets that language as evidence of a legislative

intent to bar records custodians’ access to the court system by

way of any other statutory provision. Carter argues that

allowing public agencies to sidestep OPRA’s requirements via the

DJA would eradicate the exclusive right that OPRA bestows upon

requestors to choose to institute a proceeding and select the

forum in which the dispute is resolved -- either the Government

Records Council or the Superior Court. Carter warns that

allowing public agencies to utilize the DJA would chill OPRA

requests because it would force requestors to litigate when they

might not have done so otherwise, or even dissuade requestors

from making OPRA requests in the first place for fear of being

sued as a result.

 12
 C.

 As amicus curiae, the NJPA submits that the Legislature

intentionally vested all statutory standing in the requestor.

According to the NJPA, the fact that OPRA was passed after the

DJA shows that the Legislature deliberately chose not to include

a provision in OPRA allowing public agencies to file declaratory

judgment actions. The NJPA also argues that allowing public

agencies to seek a declaratory judgment in this context would

improperly shift the burden of proof to the requestor to prove

the unlawfulness of the denial, instead of leaving the burden on

the government to prove the denial is justified by one of OPRA’s

exemptions. The NJPA highlights, further, that the DJA is

designed to provide a remedy for live controversies, not future

ones.

 III.

 We exercise plenary review over issues of statutory

interpretation. State v. Williams, 218 N.J. 576, 586 (2014).

Likewise, determinations about the applicability of OPRA and its

exemptions are legal conclusions, O’Shea v. Township of West

Milford, 410 N.J. Super. 371, 379 (App. Div. 2009); Asbury Park

Press v. County of Monmouth, 406 N.J. Super. 1, 6 (App. Div.

2009), aff’d o.b., 201 N.J. 5 (2010), and are therefore subject

to de novo review, Manalapan Realty, L.P. v. Twp. Comm. of

Manalapan, 140 N.J. 366, 378 (1995).

 13
 As always, our primary “objective [in] statutory

interpretation is to discern and effectuate the intent of the

Legislature.” Murray v. Plainfield Rescue Squad, 210 N.J. 581,

592 (2012). “If the Legislature’s intent is clear on the face

of the statute, then we must apply the law as written.” Ibid.

“Absent a clear indication from the Legislature that it intended

statutory language to have a special limiting definition, we

must presume that the language used carries its ordinary and

well-understood meaning.” State v. Lenihan, 219 N.J. 251, 262-

63 (2014). “[L]egislative language must not, if reasonably

avoidable, be found to be inoperative, superfluous or

meaningless.” State v. Regis, 208 N.J. 439, 449 (2011) (quoting

Franklin Tower One, L.L.C. v. N.M., 157 N.J. 602, 613 (1999)).

Yet, when statutory language is ambiguous, or “leads to more

than one plausible interpretation,” the court “may turn to

extrinsic evidence, ‘including legislative history, committee

reports, and contemporaneous construction.’” DiProspero v.

Penn, 183 N.J. 477, 492-93 (2005) (quoting Cherry Hill Manor

Assocs. v. Faugno, 182 N.J. 64, 75 (2004)).

 A.

 We begin with a review of the DJA, which provides as

follows:

 A person . . . whose rights, status or other
 legal relations are affected by a statute,
 municipal ordinance, contract or franchise,

 14
 may have determined any question of
 construction or validity arising under the
 instrument, statute, ordinance, contract or
 franchise and obtain a declaration of rights,
 status or other legal relations thereunder.

 [N.J.S.A. 2A:16-53.]

By vesting New Jersey courts with the “power to declare rights,

status and other legal relations, whether or not further relief

is or could be claimed,” N.J.S.A. 2A:16-52, the DJA provides all

individuals and organizations, public or private, with a forum

to present bona fide legal issues to the court for resolution,

N.J.S.A. 2A:16-53. The Legislature intended the Act to provide

“relief from uncertainty and insecurity with respect to rights,

status and other legal relations.” N.J.S.A. 2A:16-51. The

primary goal of affording this equitable relief is to allow

interested parties to preserve the status quo without having to

undergo costly and burdensome proceedings. DiFrancisco v. Chubb

Ins. Co., 283 N.J. Super. 601, 613 (App. Div. 1995).

 Although any such declaration by the court carries “the

force and effect of a final judgment,” N.J.S.A. 2A:16-59, the

Judiciary is forbidden from “declar[ing the] rights or status of

parties upon a state of facts which are future, contingent and

uncertain.” Lucky Calendar Co. v. Cohen, 20 N.J. 451, 454

(1956) (quoting Tanner v. Boynton Lumber Co., 98 N.J. Eq. 85, 89

(Ch. 1925)). The prohibition of advisory opinions prevents

courts, “through avoidance of premature adjudication, from

 15
entangling themselves in abstract disagreements.” Abbott Labs.

v. Gardner, 387 U.S. 136, 148, 87 S. Ct. 1507, 1515, 18 L. Ed.

2d 681, 691 (1967). It follows, then, that a declaratory

judgment claim is ripe for adjudication only when there is an

actual controversy, meaning that the facts present “concrete

contested issues conclusively affecting” the parties’ adverse

interests. N.J. Turnpike Auth. v. Parsons, 3 N.J. 235, 241

(1949) (citation omitted).

 Finally, the DJA is a remedial statute that “shall be

liberally construed and administered, and shall be so

interpreted and construed as to effectuate its general purpose

to make uniform the law of those states which enact it, and to

harmonize, as far as possible, with federal laws, rules and

regulations on the subject of declaratory judgments.” N.J.S.A.

2A:16-51. However, there is “ordinarily no reason to invoke the

provisions of the Declaratory Judgments Act where another

adequate remedy is available.” Rego Indus., Inc. v. Am. Modern

Metals Corp., 91 N.J. Super. 447, 453 (App. Div. 1966).

 B.

 OPRA was “designed to promote transparency in the operation

of government.” Sussex Commons Assocs., LLC v. Rutgers, 210

N.J. 531, 541 (2012). Its purpose is “to maximize public

knowledge about public affairs in order to ensure an informed

citizenry and to minimize the evils inherent in a secluded

 16
process.” Mason v. City of Hoboken, 196 N.J. 51, 64 (2008)

(quoting Asbury Park Press v. Ocean Cty. Prosecutor’s Office,

374 N.J. Super. 312, 329 (Law Div. 2004)). Such “broad public

access to information” allows the public to police “wasteful

government spending and guard[] against corruption and

misconduct.” Burnett, supra, 198 N.J. at 414. Although OPRA is

“not intended [to be] a research tool [that] litigants may use

to force government officials to identify and siphon useful

information,” MAG Entm’t, LLC v. Div. of Alcoholic Beverage

Control, 375 N.J. Super. 534, 546 (App. Div. 2005), it makes all

government records presumptively accessible to the public unless

an exemption applies, N.J.S.A. 47:1A-1; see also Mason, supra,

196 N.J. at 57. OPRA’s twenty-one exemptions are to be

“construed in favor of the public’s right of access[.]”

N.J.S.A. 47:1A-1.

 If a records request is denied, section 6 of OPRA provides

that the requesting party may “institute a proceeding to

challenge the custodian’s decision by filing an action in

Superior Court” or with the Government Records Council.

N.J.S.A. 47:1A-6. To ensure that the average citizen is not

deterred from challenging an agency’s decision due to the

financial risk involved, OPRA allows an award of a reasonable

attorney’s fee to a “requestor who prevails in any proceeding.”

Ibid.

 17
 Actions under section 6 of OPRA “shall proceed in a summary

or expedited manner,” with the public agency bearing the burden

of proving “that one of [the] exemptions or exceptions

incorporated in the statute by reference is applicable to the

requested disclosure.” Tractenberg v. Township of West Orange,

416 N.J. Super. 354, 378-79 (App. Div. 2010) (quoting Asbury

Park Press, supra, 374 N.J. Super. at 329). In order to meet

this burden, the agency must present “specific reliable evidence

sufficient to meet a statutorily recognized basis for

confidentiality.” Courier News v. Hunterdon Cty. Prosecutor’s

Office, 358 N.J. Super. 373, 382-83 (App. Div. 2003).

Speculation is not sufficient to override “the overarching

public policy in favor of a citizen’s right of access” that

guides our courts. Id. at 383. “Absent such [specific reliable

evidence], a citizen’s right of access is unfettered.” Ibid.

 Despite a clear commitment to transparency, OPRA recognizes

a privacy exception by requiring public agencies “to safeguard

from public access a citizen’s personal information” when

“disclosure thereof would violate the citizen’s reasonable

expectation of privacy.” N.J.S.A. 47:1A-1; Burnett, supra, 198

N.J. at 414, 427-28. When OPRA’s privacy exemption is at issue,

courts apply a seven-factor balancing test to determine whether

the citizen’s interest in privacy outweighs the public’s

interest in governmental transparency. Burnett, supra, 198 N.J.

 18
at 427 (adopting factors identified in Poritz, supra, 142 N.J.

at 88). Those factors are discussed below. See infra Part V.A.

 IV.

 With the pertinent provisions of OPRA and the DJA in mind,

we now consider whether the two statutes can be harmonized to

resolve the ultimate question before the Court: whether a

public entity, after denying an OPRA request, can institute an

action against the requestor under the DJA to determine whether

the requested documents should be disclosed.

 The DJA is a general statute that provides broad access to

our courts as “a means by which rights, obligations and status

may be adjudicated in cases involving a controversy that has not

yet reached the stage at which either party may seek a coercive

remedy.” Rego, supra, 91 N.J. Super. at 452-53; see N.J.S.A.

2A:16-51. Conversely, OPRA limits access to the courts by

conferring the right to initiate a suit only upon the requestor,

after a public agency’s denial of access. N.J.S.A. 47:1A-6.

 Here, when the Association received its first records

request after it was declared a public entity, an actual

controversy existed: the Association and Carter had “genuine

differences” as to the Association’s duty to disclose under

OPRA. See N.J. Ass’n for Retarded Citizens v. Dep’t of Human

Servs., 89 N.J. 234, 242 (1982). However, the Association’s

denial of access extinguished the controversy because the

 19
Association had determined its legal obligation with regard to

the relief checks. At that point, it was not appropriate for

the Association to rely on the DJA because the controversy had

reached a stage at which Carter could seek a coercive remedy by

way of section 6 of OPRA. Without a live dispute, any judicial

declaration on the Association’s right to deny access to the

relief checks would have amounted to an impermissible advisory

opinion.

 Moreover, OPRA clearly and unambiguously confers the right

to initiate a suit after a public agency’s denial of access only

upon the requestor. N.J.S.A. 47:1A-6. In the absence of

legislative intent to the contrary, as is the case here, a

specific statutory provision dealing with a particular subject

prevails over a general provision. Trinity Cemetery Ass’n, Inc.

v. Township of Wall, 170 N.J. 39, 46 (2001). We therefore

conclude that section 6 of OPRA’s special procedure for review

of an agency’s denial must prevail over the general DJA statute.

Accordingly, after an agency has denied a request, section 6 is

triggered, and only the requestor may seek judicial review of

the agency’s decision.

 We do not reach the question of whether a public entity may

file a pre-denial declaratory judgment action when confronted

with an unsettled question that has not been litigated before

and that implicates OPRA’s privacy prong, N.J.S.A. 47:1A-1.

 20
 V.

 Although we have determined that the Association’s DJA

action is moot, in the interest of judicial economy, we

nevertheless choose to decide whether OPRA’s privacy exception

applies to the relief checks issued by the Association to Doe.

See Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310,

322 (1995) (recognizing value in related claims being resolved

in one adjudication to avoid “fragmented, multiple and

duplicative litigation”).

 A.

 The Association concedes that, following its designation as

a public agency in 2013, its relief applications and payment

checks are government records and presumptively accessible under

OPRA. N.J.S.A. 47:1A-1. The Association contends, however,

that those government records are exempt from disclosure because

of its obligation under OPRA to safeguard citizens’ reasonable

expectation of privacy. Ibid. As this case presents a clash

between two of OPRA’s key competing interests -- disclosure and

protection of privacy interests -- we apply the seven-factor

balancing test adopted in Burnett, supra, 198 N.J. at 427, and

consider:

 (1) the type of record requested; (2) the
 information it does or might contain; (3) the
 potential for harm in any subsequent
 nonconsensual disclosure; (4) the injury from
 disclosure to the relationship in which the

 21
 record was generated; (5) the adequacy of
 safeguards to prevent unauthorized
 disclosure; (6) the degree of need for access;
 and (7) whether there is an express statutory
 mandate, articulated public policy, or other
 recognized public interest militating toward
 access.
We conclude that a balancing of those factors weighs in favor of

non-disclosure.

 First, financial assistance applications and payments to a

specific individual are considered government records that are

kept, made, or maintained in the course of the Association’s

official business. Although a government record, the

Association claims that relief applications often contain the

complete personal financial history of individual applicants and

should receive more protection than welfare applications and

individual pension records, which are protected under N.J.S.A.

47:1A-10.

 In applying the second and third factors, we find that the

potential harm that could be created by the release of this

information is unlimited -- identity theft, public

embarrassment, general loss of privacy, and so on. If

disclosure is required, individuals seeking benefits will fear

that sensitive information could be made public. Fourth, the

release of this information would likely create a chilling

effect among applicants for fear that the information may be

subject to public scrutiny.

 22
 Fifth, the Association has established a safeguard to

prevent disclosure by converting applicants’ names into unique

identification numbers. This also helps the Association

objectively evaluate each applicant’s claim for relief. If the

Association were forced to disclose information with applicants’

names, it would undermine this procedure.

 Sixth, even if the public had a significant interest in

evaluating the Association’s decision-making process in

affording relief to its members, there is little public need to

release a single individual’s application. Finally, under the

seventh factor, there is no public policy or recognized interest

that requires access here.

 Because all factors weigh in favor of non-disclosure, we

hold that the Association properly denied Carter’s request in

order to protect Doe’s privacy interest in the records.

Accordingly, we reverse the Appellate Division’s judgment

releasing the relief checks and awarding attorney’s fees to

Carter under OPRA.

 B.

 The common law right of access remains a distinct basis upon

which to access public records. Bergen Cty. Improvement Auth. v.

N. Jersey Media Grp., Inc., 370 N.J. Super. 504, 516 (App. Div.

2004). Under the common law, a public record is

 23
 one required by law to be kept, or necessary
 to be kept in the discharge of a duty imposed
 by law, or directed by law to serve as a
 memorial and evidence of something written,
 said, or done, or a written memorial made by
 a public officer authorized to perform that
 function, or a writing filed in a public
 office. The elements essential to constitute
 a public record are that it be a written
 memorial, that it be made by a public officer,
 and that the officer be authorized by law to
 make it.
 [Nero v. Hyland, 76 N.J. 213, 222 (1978)
 (alterations removed) (quoting Josefowicz v.
 Porter, 32 N.J. Super. 585, 591 (App. Div.
 1954)).]

Thus, to receive access to a public record under the common law,

(1) the record requested must be a common-law public document;

“(2) the person seeking access must ‘establish an interest in

the subject matter of the material,” Keddie v. Rutgers, 148 N.J.

36, 50 (1997) (quoting S. Jersey Publ’g Co. v. N.J. Expressway

Auth., 124 N.J. 478, 487 (1991)); “and (3) the citizen’s right

to access ‘must be balanced against the State’s interest in

preventing disclosure,’” ibid. (quoting Higg-A-Rella, Inc. v.

County of Essex, 141 N.J. 35, 46 (1995)).

 Because the Association requires that applicants compile

information for the Association to complete its public function

of awarding relief benefits, the information is created at the

behest of the Association. Therefore, the relief checks are

public records under the common law, a point the Association

does not presently contest. Carter’s claimed interest in the

 24
checks is to shed light on the firefighter benefits award

process.

 Like OPRA, when confidentiality concerns are raised under

the common law right of access, courts balance the requestor’s

interest in disclosure against the government’s interest in

confidentiality. Loigman, supra, 102 N.J. at 108. “[T]he

relative interests of the parties in relation to the specific

materials in question” must be the center of the balancing

process. Piniero v. N.J. Div. of State Police, 404 N.J. Super.

194, 206-07 (App. Div. 2008) (citing McClain v. Coll. Hosp., 99

N.J. 346, 361 (1985)). When there is a confidentiality claim,

the “applicant’s interest in disclosure is more closely

scrutinized.” Keddie, supra, 148 N.J. at 51. With this in

mind, courts consider whether the confidentiality claim is

“premised upon a purpose which tends to advance or further a

wholesome public interest or a legitimate private interest.”

Loigman, supra, 102 N.J. at 112 (quoting City of St. Matthews v.

Voice of St. Matthews, Inc., 519 S.W.2d 811, 815 (Ky. 1974)).

Along with a requestor’s motivation, Loigman, supra, identifies

six factors that must be balanced in order to determine whether

to disclose:

 (1) the extent to which disclosure will impede
 agency functions by discouraging citizens from
 providing information to the government; (2)
 the effect disclosure may have upon persons
 who have given such information, and whether

 25
 they did so in reliance that their identities
 would not be disclosed; (3) the extent to
 which agency self-evaluation, program
 improvement, or other decisionmaking will be
 chilled by disclosure; (4) the degree to which
 the information sought includes factual data
 as opposed to evaluative reports of
 policymakers; (5) whether any findings of
 public misconduct have been insufficiently
 corrected by remedial measures instituted by
 the investigative agency; and (6) whether any
 agency disciplinary or investigatory
 proceedings have arisen that may circumscribe
 the individual’s asserted need for the
 materials. Against these and any other
 relevant factors should be balanced the
 importance of the information sought to the
 plaintiff’s vindication of the public
 interest.

 [102 N.J. at 104, 113.]

 We conclude that a balancing of the six Loigman factors in

this case militates against disclosure. First, disclosure of

relief payments would discourage citizens who require benefits

from applying for relief, and thus hamper the Association’s

ability to perform one of its core functions. Second, the

entire relief process is conditioned on confidentiality. The

remaining factors do not weigh heavily for or against

disclosure. Therefore, on balance, the public’s interest in

access does not outweigh the Association’s interest in non-

disclosure.

 Accordingly, we find that “[t]he dangers inherent in

disclosure of confidential information for public dissemination

are so obvious” that Doe’s privacy interest “prevail[s] over the

 26
public interest in disclosing the information.” N. Jersey Media

Grp., Inc. v. Bergen Cty. Prosecutor’s Office, 405 N.J. Super.

386, 391 (App. Div. 2009).

 VI.

 For the reasons set forth above, the judgment of the

Appellate Division is reversed.

 CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON,
FERNANDEZ-VINA and TIMPONE join in JUSTICE SOLOMON’s opinion.
JUSTICE ALBIN filed a separate, concurring opinion.

 27
 SUPREME COURT OF NEW JERSEY
 A-68 September Term 2015
 077097

IN THE MATTER OF THE NEW
JERSEY FIREMEN’S ASSOCIATION
OBLIGATION TO PROVIDE RELIEF
APPLICATIONS UNDER THE OPEN
PUBLIC ACT

JEFF CARTER,

 Third-Party
 Plaintiff-Respondent,

 v.

JOHN DOE,

 Defendant-Third-Party

 JUSTICE ALBIN, concurring.

 I join the Court’s opinion in full. I write separately to

express my view that the New Jersey Open Public Records Act

(OPRA), N.J.S.A. 47:1A-1 to -13, governs a records request,

whether a public entity’s records custodian denies the request

or does not respond to the request. In other words, a records

custodian, who intends to deny a records request but does not

verbalize the denial, cannot invoke the Declaratory Judgment

Act, N.J.S.A. 2A:16-50 to -62, to do an end run around the

dictates of OPRA.

 The Court’s opinion states: “We do not reach the question

of whether a public entity may file a pre-denial declaratory

judgment action when confronted with an unsettled question that
 1
has not been litigated before and that implicates OPRA’s privacy

prong, N.J.S.A. 47:1A-1.” Ante at ___ (slip op. at 20)

(emphasis added). I believe that the Legislature’s clear intent

in passing OPRA, however, answers that question -- OPRA is the

only statutory medium in which a citizen’s records request can

be adjudicated.

 I.

 The Legislature enacted OPRA to occupy the field in

addressing records requests made by citizens to public agencies.

The Court’s opinion explains that a citizen, whose records

request is denied, may “‘institute a proceeding to challenge the

custodian’s decision by filing an action in Superior Court’ or

with the Government Records Council,” citing N.J.S.A. 47:1A-6.

Ante at ___ (slip op. at 17). The aggrieved requestor, thus,

has two alternative forums in which to seek relief: one through

our court system and the other through an administrative agency.

The requestor -- not the public agency -- has the sole “right to

institute any proceeding” arising from the denial of a records

request. N.J.S.A. 47:1A-6. We denied the records custodian the

power to initiate a declaratory judgment action against a

requestor because to do so would violate the requestor’s sole

right to initiate litigation over a records issue and to decide

the forum in which to seek relief. Ante at ___ (slip op. at

20). OPRA does not allow a public agency to haul a records

 2
requestor before a Superior Court judge on an order to show

cause to justify why he requested a document. A citizen whose

records request is denied may have no intention to take the

matter further and cannot be forced to litigate a matter against

his will.

 II.

 Every reason for denying a public agency the authority to

file a declaratory action after the denial of a records request

holds true after a request is made but before the custodian’s

denial. The Legislature did not intend that a records custodian

could merely say nothing in response to a citizen’s records

request for the purpose of circumventing the citizen’s “right to

institute any proceeding” under OPRA. See N.J.S.A. 47:1A-6.

The citizen, who receives no response from the records custodian

-- like the citizen whose request is denied -- cannot be dragged

into Superior Court against his will by the records custodian

through a declaratory judgment action. The records custodian,

through strategic timing, cannot deprive the citizen of the

statutory right of choosing whether to litigate a records

request and, if so, selecting the forum, either Superior Court

or the Government Records Council. To conclude otherwise would

have a powerful chilling effect on whether a citizen would even

request a government record, thus defeating the entire purpose

of OPRA. See N.J.S.A. 47:1A-1 (“[G]overnment records shall be

 3
readily accessible for inspection, copying, or examination by

the citizens of this State.”).

 I believe that the logic of today’s opinion and a fair

reading of OPRA preclude a records custodian from resorting to a

declaratory judgment action after a citizen makes a records

request, regardless of whether the custodian voices a denial.

 Having expressed this viewpoint, I fully concur with the

Court’s opinion.

 4